Exhibit 4



# HAGENS BERMAN
## SOBOL SHAPIRO LLP

ONE MAIN STREET
4TH FLOOR
CAMBRIDGE, MA  02142
TELEPHONE (617) 482-3700
FACSIMILE (617) 482-3003

60 WEST RANDOLPH STREET
SUITE 200
CHICAGO, IL  60601
TELEPHONE (312) 762-9235
FACSIMILE (312) 762-9286

700 SOUTH FLOWER STREET
SUITE 2940
LOS ANGELES, CA 90017
TELEPHONE (213) 330-7150
FACSIMILE (213) 330-7152

2425 EAST CAMELBACK ROAD
SUITE 650
PHOENIX, AZ 85016
TELEPHONE (602) 840-5900
FACSIMILE (602) 840-3012

1301 FIFTH AVENUE
SUITE 2900
SEATTLE, WA 98101
TELEPHONE (206) 623-7292
FACSIMILE (206) 623-0594

WWW.HBSSLAW.COM

## Table of Contents

| | |
|---|---|
| The Firm | 1 |
| The Practice | 2 |
| An Overview of Current Litigation | 2 |
| Case Developments | 6 |
| Hagens Berman vs. Big Tobacco | 10 |
| Securities Litigation | 12 |
| Environmental Litigation | 15 |
| Drug, Healthcare and Dietary Supplement Litigation | 17 |
| Insurance Litigation | 21 |
| **Partners** | |
| Steve W. Berman | 23 |
| Jeniphr A.E. Breckenridge | 24 |
| Robert B. Carey | 24 |
| Erin K. Flory | 25 |
| Carl H. Hagens | 26 |
| Sean R. Matt | 26 |
| David S. Nalven | 27 |
| Christopher A. O'Hara | 28 |
| Clyde A. Platt | 28 |
| George W. Sampson | 29 |
| Anthony D. Shapiro | 29 |
| Thomas M. Sobol | 30 |
| James P. Solimano | 31 |
| Craig R. Spiegel | 31 |
| Jeffrey T. Sprung | 32 |
| Andrew M. Volk | 32 |
| **Senior Lawyers** | |
| Elizabeth A. Fegan | 33 |
| Timothy A. Scott | 33 |
| **Associates** | |
| Ivy D. Arai | 34 |
| Elaine Byszewski | 34 |
| Robert Gaudet | 35 |
| Stephanie Levin Bozzo | 35 |
| Hugh E. McNeely | 36 |
| Edward Notargiacomo | 36 |
| Diego Rodriguez | 37 |
| Nicholas Styant-Browne | 37 |
| R. Brent Walton | 38 |
| Tyler Weaver | 38 |
| References | 39 |
| A Perspective on Our Performance from the Bench | 40 |

# The Firm

**Hagens Berman LLP** was founded in 1993 and now has offices in Boston, Chicago, Los Angeles, Phoenix and Seattle. The firm pursues the type of law that its lawyers have a passion for – representing plaintiffs in class actions and multi-party, large-scale complex litigation – and in particular engaging in cases that have the potential for having a positive impact on protecting the rights of investors, consumers, workers and the environment.

Since its founding, **Hagens Berman** has concentrated its practice in the fields of class action and multi-plaintiff litigation and has become one of the premier firms in the country in these fields, with cases throughout the nation and an international reputation. The firm focuses on representing plaintiffs in securities, investment fraud, product liability, tort, antitrust, consumer fraud, employment, environmental and ERISA cases. The firm has become particularly adept at managing multi-state and nationwide class actions through an organized, coordinated approach that implements an efficient and aggressive prosecutorial strategy in order to place maximum pressure on the defendant or defendants.

In recent years, the firm expanded its practice to include representing governmental entities including actions against the tobacco industry. In the groundbreaking state tobacco litigation, the firm represented the states of Alaska, Arizona, Idaho, Illinois, Indiana, Montana, Nevada, New York, Ohio, Oregon, Rhode Island, Vermont and Washington as special assistant attorneys general in their law enforcement actions against the tobacco industry. The firm has served as court-appointed lead/class counsel in state and federal litigation in states throughout the country, with a particularly heavy caseload in Arizona, California, Idaho, Illinois, New York, Oregon, and Washington. **Hagens Berman's** lawyers have played lead and/or major roles in cases that have resulted in cumulative recoveries in excess of $260 billion.

In 2002, the firm opened an office in Boston, expanding the firm's reach across the nation, and in 2004 added an office in Chicago. The Boston office has become a hub for **Hagens Berman's** representation of states and private parties in actions against major pharmaceutical companies, and establishes the firm as a clear leader in the battle for more affordable prescription drugs and a more responsible pharmaceutical industry.

# The Practice

## AN OVERVIEW OF CURRENT LITIGATION[*]

**ANTITRUST LITIGATION.** Hagens Berman works to keep marketplaces free of price fixing and collusion, protecting the availability of high quality, low priced goods. The firm's antitrust practice includes nationally certified class actions against manufacturers of disposable contact lenses and a high-profile case in which the Justice Department has commenced parallel proceedings challenging the charges imposed by **Visa** and **MasterCard** in connection with use of the debit card.

**Hagens Berman** was pleased to run all discovery directed to one of the major defendants in *In Re Linerboard Antitrust Litigation*. This unique antitrust case premised, in part, on an exception to the *Illinois Brick* direct purchaser requirements, resulted in a $202 million settlement. This settlement is the sixth largest antitrust settlement ever reported.

**Microsoft** recently honored the firm by selecting **Hagens Berman** to represent the company in antitrust litigation. The firm currently assists as national counsel in more than 100 class actions currently faced by the company.

The firm currently is prosecuting a price manipulation case against **BP Amoco (BP)** alleging that **BP** has artificially and unlawfully manipulated the price of gasoline in the state of California. In another major antitrust action the firm has been named lead trial counsel in the case of *Information Resources, Inc. v. A.C. Nielsen* where the damages when trebled exceed $1 billion. The firm replaced well-known litigator David Boies.

**CIVIL RIGHTS.** **Hagens Berman** actively seeks out complex civil rights cases, taking on the role of advocate for a variety of individuals and organizations. The firm vigilantly keeps abreast of new state and national legislation that allows it to better represent its clients, including diverse communities such as World War II prisoners of war and conscripted civilians.

Currently, **Hagens Berman** leads a team of lawyers in the **Gold Train** case. The firm's involvement follows from its representation of former forced and enslaved laborers for German companies in the Nazi Slave Labor Litigation.

In conjunction with the Trial Lawyers for Public Justice, **Hagens Berman** recently won a settlement from city officials after filing a class action claiming violation of the First and Fourth Amendments. Tens of thousands of Seattle citizens became targets during their peaceful protest of the WTO convention on December 1, 1999. After Seattle officials banned any form of peaceful protest, Seattle police attacked anyone found in the designated "no protest" zones with rubber bullets and tear gas, arresting and incarcerating city residents for three to four days.

Riot Police Douse Peaceful Protesters with Pepper Spray

Riot Police Confront Protestors on Downtown Seattle Streets

 

---

[*] In alphabetical order.

**CONSUMER LITIGATION.** Using large-scale litigation to pressure defendants who defraud or take advantage of customers, **Hagens Berman** pursues opportunities to confront deceptive advertising practices, financing and insurance scams, and redlining practices, among other consumer fraud techniques. Consumer litigation remains one of the firm's largest practice areas, with attorneys representing millions of consumers in numerous actions.

**DRUG LITIGATION.** The firm actively engages in litigation that improves the quality of health products and medical systems, and confronts unscrupulous medical distributors and producers of products such as pharmaceutical drugs, herbal supplements and beauty products. **Hagens Berman** frequently partners with consumer interest and senior organizations to challenge false advertising, pricing schemes, and other drug fraud activities.

Recent successes include reaching a settlement on behalf of all diet drug users in Montana and exerting landmark pressure on **Abbott Laboratories** causing them to send a letter warning laboratories about the risks of false positives in their tests for hCG. **Hagens Berman** represents several plaintiffs in important litigation against **Abbott** after false positives erroneously diagnosed plaintiffs with cancer leading to unnecessary treatment including, in some cases, hysterectomies. In 2003, the firm settled a case against **Rexall** representing thousands of women who purchased their cellulite-fighting product "Cellasene." The plaintiffs alleged that the product didn't work, and **Hagens Berman** filed the first case in the nation challenging Cellasene marketing. The FTC filed a similar action against Rexall.

**EMPLOYMENT LITIGATION.** **Hagens Berman** takes a special interest in protecting workers from exploitation, and seeks out cases with potential for ending the largest and most heinous worker abuses. Since employees often lack the individual power to bring about meaningful change in the workplace, the firm typically represents classes of employees in litigation suits including race discrimination, immigrant worker controversy, hour and wage issues, on-the-job injury settlements and other crucial workplace issues.

**Hagens Berman** represents female workers at **Boeing** facilities in Tulsa, California and other locations challenging disparities in pay and promotion. The firm also filed a proposed class action on behalf of resident alien workers who claim that the use of illegal workers has unlawfully depressed their wages. Other wage and hour class actions include cases on behalf of workers who were not properly paid for overtime, including a certified class of **Denny's** employees, and on behalf of employees of General Electric Aircraft alleging wage and hour violations.

**Hagens Berman** is currently lead counsel representing African-American workers at **Boeing** facilities nationwide, in a suit alleging racial discrimination in promotions, compensation, job assignments, management positions, training, overtime, retention ratings, bonuses and other benefits of employment.



Washington State Ferry Chinook



**ENVIRONMENTAL LITIGATION.** Believing that protecting and repairing our ecosystem from irresponsible use is some of the most rewarding work a law firm can do, the firm frequently represents homeowners and landowners injured by environmental abuses. The firm has handled a variety of landmark environmental litigation cases in the Northwest and internationally, using relationships with top-notch environmental experts to develop compelling arguments.

In a recent high-profile case, the firm successfully pursued a class action on the adverse environmental impacts of fast ferry service in Washington state. The settlement brought relief to the class members and slowed ferry vessels when traveling in sensitive areas. In other litigation, the firm represented plaintiffs in a case against **Kerr-McGee**, on behalf of thousands of persons exposed to radioactive material in a residential area in West Chicago, Illinois.

The firm's Arizona office represented the **Sierra Club** in a case challenging the U.S. Forest Service's approval of a commercial shopping center on the edge of the Grand Canyon. The District Court granted the firm's request to enjoin development of the shopping mall, protecting the Grand Canyon from overdevelopment.

**ERISA LITIGATION.** The federal Employee Retirement Income Security Act (ERISA) spells out the fiduciary duties that plan trustees owe to participants and beneficiaries in retirement programs such as stock options or 401(k) plans, along with guidelines on disability, medical insurance, and severance pay.

**Hagens Berman** specializes in recovering pension and retirement funds lost due to imprudent direction by plan directors, as well as safeguarding the rights of plan participants. Courts have recognized **Hagens Berman's** aptitude in handling large ERISA cases, most recently appointing the firm co-lead counsel in the **Enron** employee litigation. The firm is also litigating ERISA cases on behalf of employees of **IPALCO, UAL** and **Montana Power**.

The firm pioneered the discovery of fraud in discounts to employee health plans, representing thousands of **Blue Cross** health insurance plan participants in 10 states who allege that the insurer overcharges participants, obtaining discounts from hospitals but not passing that savings along when calculating co-payments.

The firm's discovery led to a Congressional inquiry concerning the company's billing practices. **Hagens Berman** also represents plaintiffs in a proposed class action against **Regence**, breaking new ground in the coverage of contraceptives by health insurance plans.

**INSTITUTIONAL INVESTOR LITIGATION.** **Hagens Berman** provides specialized securities litigation services to public, private and Taft-Hartley pension funds, offering its proprietary and unparalleled asset protection and recovery services to both foreign and domestic institutions. By giving clients the ability to identify, investigate and react to potential wrongdoing by companies in which they invest, the firm enables them to be proactive, not merely reactive. Currently, the firm represents the State of Ohio in the **Exxon Mobil Securities Litigation**, and a major pension fund in the **JP Morgan Securities Litigation**.

Recent class actions led by **Hagens Berman** obtained significant settlements. In the **Morrison Knudsen** case, the firm secured a settlement of approximately 60 percent of the largest estimates of possible losses for class members, while in the **Oppenheimer Delta Partners Litigation** the class was awarded settlements of approximately 80 percent of possible losses. In the **Midisoft** case, **Hagens Berman** obtained more than 50 percent of total damages. Numerous other recent cases such as **Waste Management** and **Cendant** have obtained hundreds of millions of dollars in settlements and recovered a large percentage of damages for injured shareholders.

**PRODUCT LIABILITY LITIGATION.** When a product fails to meet accepted or advertised standards, the results can be hazardous or even deadly. In such cases, consumers deserve a right to redress. **Hagens Berman's** product liability practice represents consumers in variety of product cases including automobile defects, home equipment and defective software.

Firm successes include a settlement involving **Louisiana-Pacific Siding** in which more than 130,000 claims have been paid exceeding $500 million and a $925 million settlement in a polybutylene piping case. **Hagens Berman** also represents plaintiffs alleging defects in trunk release mechanisms in a case surrounding the death of four children who died locked in the trunk of a car. The firm continues to pursue Ford and Nissan on behalf of consumers with defective accelerators.

**SECURITIES LITIGATION.** A cornerstone of the firm's practice, **Hagens Berman** contests securities fraud in courts across the nation. To prosecute these complex cases, the firm uses highly

Case 1:05-cv-00220-SLR    Document 3-5    Filed 04/22/2005    Page 8 of 44

HAGENS BERMAN LLP

experienced experts in a variety of fields as an integral part of the prosecution team, expanding the group's expertise in sophisticated financial and accounting issues.

In a high-profile case, **Hagens Berman** pursued **Boeing** after a tremendous stock loss resulted from the company allegedly conspiring to conceal production problems and bolster share prices through the conclusion of a stock-swap purchase **of McDonnell Douglas**. After several years of intense discovery and litigation, **Boeing** eventually agreed to a settlement that provided more than $92 million to recoup investors for their losses.

The firm has also acted as co-lead counsel and plaintiffs' counsel representing investors in class actions for securities violations against a variety of corporations including **WPPSS, Boston Chicken, Oppenheimer, PriceCostco, MK Rail, Bonneville Pacific, Mercer International**, and **Omega Environmental**.

**PERSONAL INJURY LITIGATION.** Committed to justice and appropriate compensation in issues of personal injury and wrongful death, the firm assists clients in a range of personal injury litigation. **Hagens Berman** knows that the health and quality of life of our clients hangs in the balance of the firm's work and has developed an exceptional track record in obtaining significant settlements and awards for the firm's clients.

Cases include **Latex Glove Product Liability Litigation** after nurses and other healthcare providers developed disabling chemical reactions to latex gloves as a result of continuously wearing them on the job, and claims against a **nursing home** where a drug-addicted worker deprived residents of needed pain medications, appropriating the medications for herself. Our lawyers recently obtained a seven figure verdict for a client's permanent injury after logs fell off a truck on its way to a mill, crushing his car with him in it. Recently we reached a multi-million dollar settlement on behalf of a dentist who was brain injured as a result of medical malpractice.

**SPECIAL CIRCUMSTANCES LITIGATION.** Certain significant **Hagens Berman** cases fail to fall within an overarching practice area but are substantial enough cases in themselves to represent an independent type of litigation. Special circumstances litigation includes cases ranging from inflated interest rates to slave labor, from illegal arrests to money laundering. Specific examples of special circumstances litigation are listed below:

- **ANHEUSER BUSCH/MILLER BREWING.** The firm represents the family of Casey Goodwin, a 20-year-old girl killed by an underage drunk driver, in a suit alleging that **Anheuser-Busch** and **Miller Brewing** both promote lemonade- and cola-like 'alcopops' with flashy youth targeted ads, promoting and facilitating underage drinking with reckless disregard for human life and the well-being of the public.

- **SWISS BANK LITIGATION.** During World War II, Nazis confiscated property and money from holocaust victims, depositing the money and goods into Swiss banks. **Hagens Berman** represented holocaust victims who were victims of this theft, as well as those whose property was confiscated after directly depositing property into the bank. One of the largest money laundering schemes in history; the firm seeks damages and redress for the class.

**WHISTEBLOWER LITIGATION. Hagens Berman** represents "whistleblowers" in a variety of industries with a significant number of cases involving clients using the False Claims Act to recover damages suffered by the federal government. Current cases include actions involving fraudulent Medicare billing, defense contractor fraud and distinctive theft cases.

# Case Developments

**AVERAGE WHOLESALE PRICE DRUG LITIGATION.** Hagens Berman represents plaintiffs in cases against drug manufacturers misrepresenting the prices paid to them for pharmaceuticals by physicians and pharmacies, thus reaping billions of dollars of profit at the expense of American consumers, including state Medicaid programs.

Recently appointed lead counsel in a proposed nationwide class action also focusing on abuse of AWP, Steve Berman and Tom Sobol now lead the case against pharmaceutical company defendants throughout the United States.

**BP AMOCO CALIFORNIA ANTITRUST LITIGATION.** Hagens Berman filed this case in California charging **BP Amoco** with illegally restricting the supply of crude oil on the West Coast resulting in artificially increased gasoline prices in California.

**BURLINGTON NORTHERN HEARING LOSS LITIGATION.** The firm represents a potential class of 4,000 railroad workers who settled hearing loss claims with **Burlington Northern**. The complaint alleges that the settlements obtained by these workers were the result of a secret and illegal deal that the railroad reached with the law firm representing the workers.

The Ninth Circuit Court of Appeals recently denied efforts by defendants **Burlington Northern Santa Fe Railway Company** (NYSE:BNI) and a Portland, Ore-based law firm to appeal key rulings. The court has denied all summary judgment motions.

**DAIMLERCHRYSLER LENDING DISCRIMINATION.** Hagens Berman represents customers who were rejected financing in a proposed class action lawsuit accusing DaimlerChrysler's financing subsidiary, Chrysler Financial Company, of denying credit to customers in the Chicago area based on race. The suit claims Chrysler management systematically and intentionally denied vehicle financing to creditworthy minorities in two Chicago neighborhoods, based on the neighborhood in which they lived and the dealerships from which they selected to purchase their cars. The suit also contends that the practice continues today in the Chicago area and Chrysler's Illinois sales zone. Filed in U.S. District Court in Illinois, the suit seeks to represent all people of color in Chrysler's Illinois sales zone who have been denied financing from Chrysler despite their creditworthiness. The suit names DaimlerChrysler Services North America, LLC, d/b/a Chrysler Financial Company, LLC, a wholly owned subsidiary and captive financing arm of DaimlerChrysler, as the defendant. The suit describes meetings between Chrysler and its dealerships in which Chrysler executives disclosed - using shocking and disturbing racist slurs and derogatory comments - that Chrysler did not want to finance car purchases by blacks, claiming they are inherently higher credit risks. Recently unsealed depositions from Chrysler executives in the case provide strong evidence that top Chrysler executives often used racial slurs and derogatory remarks, and held racist attitudes that may have weighed in their decisions to finance cars. According to the suit, Chrysler uses an automated computer program called the ACE (Automated Credit Evaluation) System, which is designed to give colorblind, objective credit evaluations to customers applying for financing from Chrysler. However, the complaint argues that Chrysler modified the ACE System software with a "disabling switch" that rerouted all applications from particular dealerships for subjective review by an employee at Chrysler Regional Headquarters. The suit cites two dealerships in which virtually every credit application submitted by a black customer was denied financing regardless of credit scores. The two dealerships have also filed suit against Chrysler, claiming racial discrimination against customers, breached contracts and forced agreements brokered by Chrysler zone managers resulted in severe financial losses. The class-action suit seeks damages related to civil rights violations and the paying of higher

interest rates by plaintiffs, as well as punitive damages to deter the company from discriminatory conduct.

**DRAM ANTITRUST LITIGATION.** Hagens Berman has been appointed co-lead counsel in a suit on behalf of purchasers of DRAM (Dynamic Random Access Memory) from Micron Technology, Crucial Technologies, Infineon Technologies, Hynix Semiconductor Inc and Samsung Electronics, claiming the companies secretly agreed to reduce supply of DRAM in order to artificially raise prices. According to the suit, the companies conduct caused Michael Dell, founder and CEO of Dell Computers, to state during a news conference, "I think we saw cartel-like behavior by a couple of DRAM suppliers." The proposed class action seeks to represent all persons who purchased DRAM from the defendant companies from December 1, 2001 through June 18, 2002.

**ELECTRIC RATE PAYER LITIGATION.** Hagens Berman has filed suit against several major electric power companies on behalf of **Snohomish PUD**, the largest public utility district in Washington, claiming the companies conspired to drive up electricity prices during last year's power crisis. The defendants include: **Williams Electric Marketing, Mirant Corporation, Reliant Energy Services, Duke Energy Trading, Dynegy Power Marketing** and **Sempra Energy Resources**. The suit seeks to force the defendant power companies to return profits wrongfully amassed since January 2001.

**ENRON EMPLOYEE LITIGATION.** The firm has been appointed co-lead counsel in the **Enron** case on behalf of 24,000 employees against defendants including, but not limited to, the **Enron** company, **J.P. Morgan Chase & Co, Credit Suisse First Boston Corporation, CitiGroup, Arthur Anderson, LLP,** and law firm **Vinson & Elkins**. A complaint amended in 2002 expanded the initial case alleging that the investment bankers and attorneys failed in their obligation to review the financial statements and legal status of **Enron** and were thus active participants in creating **Enron's** illusion of profitability. The concealing of **Enron's** true financial condition enabled **Enron**, its top executives and the other defendants to profit at the expense of employees who continued to invest in the company through the retirement and savings plans.

**EXXON MOBIL SECURITIES LITIGATION.** The merger of Exxon-Mobil created the largest corporation in history. **Hagens Berman** is representing **Ohio Public Employees Retirement System** and **State Teachers Retirement System** in challenging the disclosures made by **Exxon** in connection with this merger.

**GRASS SEED LITIGATION.** Hagens Berman filed a class-action suit on behalf of a group of Idaho residents against the state's grass-burning policy, claming the practice endangers the health of thousands, especially those with respiratory conditions. The suit calls for an immediate end to grass burning and alleges that Idaho's burn policy, which allows grass-seed farmers to burn in excess of 20,000 acres every year, lags far behind other states – including neighboring Washington – which have effectively outlawed grass burning altogether.

Idaho State Court recently ruled that a state law giving Idaho grass-growers broad exemption from trespass and nuisance laws during field burning is unconstitutional. The law, passed in the last session of the Idaho state legislature, was part of a long-fought legal battle between grass growers and a group of individuals who suffer significant health effects from the smoke due to respiratory conditions. That ruling has now been overturned by the Idaho Supreme Court.

**IPALCO LITIGATION.** The firm has brought a proposed class action against **Ipalco Enterprises**, an Indiana electric utility, and in particular **Ipalco** officers, alleging that the defendants breached their fiduciary duties under ERISA by investing most of the plan's assets in **Ipalco** stock while agreeing to a takeover by **AES**, wiping 90 percent off the value of the stock. Locked in and prevented from changing their options, plan members lost their assets while the officers dumped their own

holdings prior to the takeover and the plummeting of the share price. In addition, the structure of the takeover agreement granted the same officers huge "termination benefits" totaling more than $46 million.

**JP MORGAN CHASE SECURITIES LITIGATION.** This litigation seeks to recover losses incurred by investors in **JP Morgan** stock as the result of its exposure to liability for its lending activities with **Enron**. Several major banking institutions, including **Citigroup** and **JP Morgan**, helped precipitate the **Enron** debacle, and the suit alleges **JP Morgan** helped disguise transactions with **Enron**, treating loans as commodity transactions. **Hagens Berman LLP** is representing the ECA and Local 134 IBEW Joint Pension Trust of Chicago as the lead plaintiff, and the firm was recently appointed co-lead counsel in the case.

**IN RE METROPOLITAN SECURITIES LITIGATION.** In a securities fraud class action filed in Washington state, **Hagens Berman** represents thousands of investors throughout the western United States who purchased debt and equity offerings from two related companies, Metropolitan Investment Securities Company, Inc. and Summit Securities, Inc. **Hagens Berman** is pursuing their former directors and accountants to recover losses stemming from an alleged Ponzi scheme and accounting fraud that decimated investors' holdings and plunged both companies into bankruptcy.

**NCAA ANTITRUST LITIGATION.** Hagens Berman represents former walk-on college football players who were denied athletic scholarships because the **NCAA** illegally limits the number of scholarships that Division I-A schools can give. Although major college football programs routinely field squads of 115 or more football players, as a group the schools have agreed, through the **NCAA**, to provide scholarships to only 85 of those players. At the same time, the schools and the **NCAA** earn hundreds of millions of dollars annually from big time college football. Walk-on players work as hard and contribute as much to the success of their team as do "scholarship" players, but they often leave school deep in debt from student loans. On behalf of those players, **Hagens Berman** is pursuing antitrust claims against the **NCAA**.

**REGENCE CONTRACEPTIVE COVERAGE LITIGATION.** The firm represents employees and employers covered by **Regence** in a lawsuit claiming that the denial of coverage for prescribed contraceptives violates state and federal law.

**RIO TINTO/BOUGAINVILLE LITIGATION.** In the **Rio Tinto** litigation, Hagens Berman represents a proposed class of citizens of the Island of Bougainville. Rio operated the world's largest copper mine and dumped billions of tons of mine waste on the island. The extent of the pollution sparked an armed revolt to occupy the mine, shut it down and launched a ten-year war resulting in the death or injury of thousands. The complaint alleges that Rio's conduct in polluting the land, injuring the people and in inciting and/or participating in the conflict, violated international law.

**UAL ERISA LITIGATION.** The original complaint, filed February 28, 2003, represents a class of UAL employees, seeking to recover approximately $2 billion dollars in losses they suffered when United Airlines stock declined as the company descended into bankruptcy. The most significant change in the amended complaint is the addition of State Street Bank and Trust Company (State Street) as a defendant. The amended complaint claims that State Street breached its fiduciary duties as trustee of the ESOP. The ESOP committee and its members remain defendants, although their liability is limited to coverage provided under any available insurance policy or policies.

Based on newly obtained documents including the ESOP Committee meeting minutes, the amended complaint alleges the following:

- State Street served as the Trustee to the ESOP, and had fiduciary obligations to the ESOP participants under ERISA.

- "As of the beginning of the Class period [July of 2001], UAL faced imminent bankruptcy; yet, although State Street attended every meeting of the ESOP Committee, State Street never questioned the actions of the ESOP Committee until August 20, 2002. By this time UAL stock had lost most of its value."

- "Even after placing UAL stock on its 'watch list' in February of 2002 due to the Company's precarious state and the risk of bankruptcy, State Street continued to hold and acquire UAL stock and did not question the Committee Members' inaction or even inform the Committee that State Street had placed UAL stock on the watch list and that ERISA mandated an objective assessment as to the continued prudence of maintaining all of the Plan's assets in UAL stock."

- "Significantly, once State Street belatedly informed [ESOP] Committee Members as to the scope of their duties under ERISA and informed them that ERISA required that the Plan requirement of 100% investment in UAL stock must be disregarded when such holdings became imprudent, the Committee Members were quick to appoint State Street as Investment Manager. As State Street recognized, it was at all times under a duty to monitor the prudence of UAL stock as an investment, and to override any orders to buy or hold UAL stock if such order was itself disloyal, imprudent, or otherwise inconsistent with ERISA. Throughout the Class Period, all orders to buy or hold UAL stock were imprudent and contrary to ERISA and should have been overridden by State Street."

- "Regardless of the wording of the ESOP documents, all Defendants were bound by their duties of prudence and loyalty to disregard the Plan's requirements when, as here, following the Plan's requirements was itself disloyal and imprudent. Regardless of any terms of the Plan, all Defendants had a duty under 29 U.S.C. § 1104(a)(D) to: (1) cease making purchases of Company stock in the ESOP, and (2) sell all or large portions of the Company stock that was then in the ESOP."

**VISA/MASTERCARD ANTITRUST LITIGATION.** Hagens Berman filed suit against credit card giants **VISA** and **MasterCard** on behalf of retailers, challenging charges the companies imposed in connection with use of debit cards. **Hagens Berman** attorney George Sampson served as co-lead counsel in this matter, and helped direct all the lawyers working on the case by setting strategy and providing oversight on all matters.

**Visa** and **MasterCard** recently reached a $3 billion settlement in the suit, and agreed to stop requiring retailers to accept both their credit and debit cards, lowering their transaction fees by about $1 billion per year.

# Hagens Berman vs. Big Tobacco

**Hagens Berman** played a major role in representing state government in litigation against the tobacco industry. Because of the unprecedented nature of this litigation, **Hagens Berman's** role and approach is detailed here.

**A TRIAL-HARDENED LITIGATION TEAM.** In the State Attorneys General actions, only two states actually took their cases to trial: Washington and Minnesota. This means that in a government tobacco law enforcement and medical cost recovery action, only two private firms in the entire country have trial experience against the industry – **Hagens Berman** is one of those firms. In the Washington case, Steve Berman was co-lead trial counsel. In this role at trial, he participated in voir dire, delivered the majority of the State's opening statement and presented witnesses, two of whom would become the most important witnesses in the liability phase of the case (Dr. Jack Henningfield, an expert on cigarette design, and Dr. William Farone, former director of research for Philip Morris). Steve also chaired major strategic decisions, and the firm assisted in the preparation of other witnesses presented by the State's other trial lawyers in the case.

**AN EMPHASIS ON LAW ENFORCEMENT.** Hagens Berman was instrumental in developing what came to be accepted as the predominant legal tactic to use against the tobacco industry; to wit, emphasizing traditional law enforcement claims such as state consumer protection, antitrust and racketeering laws. Before **Hagens Berman's** involvement in the state cases, the predominant claims being pursued by most of the states were traditional tort claims, which would prove in many subsequent states to be unsuccessful. With the exception of the Idaho case, not a single court in a case where **Hagens Berman** served as private counsel to a state dismissed a state's consumer protection or antitrust claims. In three states – Arizona, Ohio and Oregon – **Hagens Berman** took the lead in pressing the respective states' racketeering statutes and, as a result, the tobacco defendants were faced with the very real prospect of a profits disgorgement remedy, penalties and, in the case of Ohio, the payment of double damages.

**EXCELLENT WITNESS RAPPORT.** One of the keys to beating the tobacco industry lies with presenting the proper witnesses, both expert and lay witnesses. With so many states in litigation against the industry, the time and resources of many of the important expert witnesses were taxed. As a result, several witnesses decided to limit their involvement to a small number of states. We found that some of these witnesses most approved of the manner in which **Hagens Berman** assisted in the preparation and presentation of their testimony, with the result that **Hagens Berman**, and the states with which the firm worked, became priority clients.

**LEGAL RESEARCH AND BRIEFING.** With the emphasis on law enforcement claims, **Hagens Berman** attorneys built on their already considerable experience utilizing consumer statutes and became experts in consumer protection, antitrust and racketeering laws in the states the firm represented. Because many of these state statutes were patterned after and followed federal law, our expertise with the FTC Act, the Clayton and Sherman Acts, and federal RICO grew. In each state we represented, **Hagens Berman** took the lead in opposing defendants' onslaught of motions to dismiss and, where applicable, motions for summary judgment. As the record reflects, we achieved a remarkable degree of success in these endeavors.

**LIABILITY DOCUMENT DATABASE.** Hagens Berman helped initiate and coordinate the so-called multistate document review project that was instituted to ensure that all relevant documents

HAGENS BERMAN LLP

were produced, reviewed and selected for use by the states in the Attorneys General actions. Over 30 million documents were reviewed under the firm's supervision by 12 lawyers from the firm and over 40 assistant attorneys general. As a result of these efforts, we have compiled comprehensive liability documents that are readily searchable by employing a variety of search criteria and are easily accessible. In addition, having gone to trial against the industry, we organized the best or "hottest" liability documents in our trial exhibit notebooks.

**DE-PRIVILEGING EXPERTISE.** Some of the most damaging liability documents for the industry were and are improperly cloaked from discovery by false claims of attorney-client and work product privilege. Many of these documents were brought to light in the Minnesota litigation, but thousands remained. In a coordinated strategy employed across many of the states that **Hagens Berman** represented, we continued the de-privileging of these important documents. This effort required countless hours in hearings with judges and special masters, in addition to extensive briefing.

**A FOCUS ON TARGETING MINORS.** In tandem with our general law enforcement approach, **Hagens Berman** focused the state legal claims on the industry's deplorable practice of luring children to tobacco use. As part of this focus, in Arizona and Ohio we commissioned an expert survey of adolescents' perception of tobacco advertising in general and, more specifically, on the deception of RJR's Winston 'No Bull/No Additives' campaign. The survey data revealed that the vast majority of minors exposed to the campaign believed that the 'No Additives' slogan meant that the cigarette was either less addicting, safer or less harmful to health (when, of course, this was not true). This campaign was the target of a preliminary injunction motion in the Arizona case that was still pending when the states settled their cases. On March 3, 1998, the FTC announced it settled a claim it had subsequently filed on this issue based on our work in Arizona.

## TESTING OUR TRIAL STRATEGY WITH FOCUS GROUP STUDIES

**Hagens Berman** conducted numerous focus groups in different states, thus acquiring unparalleled experience with the reactions of potential jurors.

## SERVING THE ELECTED CLIENT

**Hagens Berman** was chosen, after competitive bidding, as counsel for 13 states, including those with democratic and republican leadership. The reason for our retention, in addition to excellent trial skills and complex litigation service, was our sensitivity to the needs of clients who were elected officials.

## KEY ROLE IN THE NATIONAL SETTLEMENT NEGOTIATIONS



Steve Berman and Steven Mitchell were both heavily involved in the proposed June 20, 1997 national settlement and the November 1998 final state settlement that settled all of the state's cases for $206 billion. As such, both have unparalleled experience in negotiating with tobacco industry lawyers and the tobacco companies' CEOs.

## TRIAL EXPERIENCE

The trial of the Washington case was one of the largest trials conducted in the United States. It lasted three months. Thousands of exhibits were offered into evidence and the case was presented using state-of-the-art technology.

Attorneys Steve Berman (far left), Jon Ferguson, and Paul Luvera with Washington State Attorney General Christine Gregoire Announcing Court Approval of the Historic Washington Settlement.

# Securities Litigation

One of the cornerstones of **Hagens Berman's** practice since the inception of the firm has been securities litigation. **Hagens Berman** has recovered hundreds of millions of dollars for institutional and individual investors defrauded by unscrupulous management of publicly held corporations.

## INVESTOR LOSSES FROM FINANCIAL FRAUD ARE A WIDESPREAD AND GROWING PROBLEM FOR INSTITUTIONAL INVESTORS

Financial fraud is running at epidemic proportions in the current market. Every year, more numerous and larger financial frauds occur. And the fraud has not been limited to smaller or "start-up" companies. The past few years have seen even well-established companies such as **Enron, Waste Management, Sunbeam, Cendent, Boeing** and **Rite Aid** involved in massive financial frauds that have caused more than $160 billion in losses to their investors.

Everyone from the past Chairman of the SEC, Arthur Levitt, to famed investor Warren Buffet recognize the widespread problems in the accuracy of financial reporting that exist in the market today. As Chairman Levitt remarked in a September 1998 speech:

> *I fear that we are witnessing an erosion in the quality of earnings, and therefore the quality of financial reporting. Managing may be giving way to manipulation. Integrity may be losing out to illusion.[1]*

Warren Buffett echoed this sentiment in his Letter to Shareholders contained in Berkshire Hathaway's 1998 Annual Report:

> *Many major corporations still play things straight, but a significant and growing number of otherwise high-grade managers... have come to the view that its okay to manipulate earnings to satisfy what they believe are Wall Street's desires.[2]*

Investing is, by nature, a speculative business involving a wide variety of risks. But no money manager should be forced to endure the risk that the reported financial condition of the company was misrepresented. The accounting profession – the supposed "public watchdog" overseeing public companies to ensure accurate financial reporting – has not been a protector of the investors. As the current Chairman of the SEC, Harvey L. Pitt described in a recent public statement, this lack of diligence in the accounting profession has led to a "growing pattern" of accounting failures:

> *Finally, there is a need for reform of the regulation of our accounting profession. We cannot afford a system, like the present one, that facilitates failure rather than success. Accounting firms have important public responsibilities. We have had far too many financial and accounting failures. The Commission cannot, and in any event will not, tolerate this pattern of growing restatements, audit failures, corporate failures and investor losses. Somehow, we must put a stop to a vicious cycle that has been in evidence for far too many years.*

---

[1] *The Numbers Game,* remarks by Arthur Levitt on September 28, 1998 at the NYU Center for Law and Business.

[2] *1998 Annual Report of Berkshire Hathaway,* p. 15.

HAGENS BERMAN LLP

## SERVICES PROVIDED TO INSTITUTIONAL INVESTORS

**Hagens Berman** is a leading provider of specialized securities litigation services to public, private and Taft-Hartley pension funds. **Hagens Berman** offers its proprietary and unparalleled asset protection and recovery services to both foreign and domestic institutions. Our institutional services provide participants with the ability to identify, investigate and react to potential wrongdoing by companies they invest in.

Our program enables our clients to be proactive, not just reactive. For example, in litigation, new information is often revealed on a daily basis. We update our clients on an ongoing basis regarding their exposure and advise them on their legal rights and potential remedies. We make a commitment to our institutional and pension fund clients to protect and defend all of their rights as shareholders and guardians of their beneficiaries' retirement funds.

A professional money manager is in business to maximize its clients' returns and obviously does not like losing his clients' money to unscrupulous companies deceiving him through financial statement manipulation. Further, the competitive nature of the money management business is such that the additional few tenths of a percentage point lost from investing in companies that perpetrated frauds can make a significant difference to a money manager's annual return. And a lower annual return can make a huge difference to the money manager in terms of current compensation and future marketing potential of his services.

Through litigation, a money manager can recover a substantial percentage of those losses – thereby significantly increasing his performance. However, a money manager is a fiduciary, and most often does not have the ability or the desire to risk its own or its clients' funds on speculative litigation using typical hourly-rate law firms. These types of law firms will not typically pursue contingent litigation and may, in fact, be conflicted from pursuing such litigation by their representation of accountants, underwriters or other potential defendants.

**Hagens Berman** provides several different methods of fraud recovery litigation services to institutional investors that can help solve these problems. First, if the case is of sufficient size, and the factual background of the case fits within certain parameters, **Hagens Berman** will bring an individual action on behalf of the institutional investor to recover the losses. As shown below, individual actions may provide significant benefits to the institutional investor, with relatively little risk.

Alternatively, the institutional investor may wish to be the "lead plaintiff" in a securities class action against the offending company. **Hagens Berman** is well qualified to pursue either method of recovery.

## CLASS ACTIONS

An institutional investor may instead decide to become the "lead plaintiff" in a class action securities fraud case against the company. Although the tide is slowly changing, for the most part institutions have been reluctant to step forward to control the case. Many class action cases are very successful, and provide meaningful recoveries to the class members. For example, the Morrison Knudsen and Oppenheimer Delta Partners litigations, both led by **Hagens Berman**, obtained settlements of approximately 60% and 80%, respectively, of the largest estimates of possible losses for the class members. The Midisoft case, also directed by **Hagens Berman**, obtained more than 50% of total damages. Numerous other recent cases such as Waste Management and Cendant have obtained hundreds of millions of dollars in settlements and recovered a large percentage of damages for injured shareholders.

## DUTIES OF A LEAD PLAINTIFF

As a class representative, the Court requires that you will adequately and fairly represent the class. To perform these duties, the institution must be generally familiar with the litigation. This does not mean it must know every aspect of the litigation. **Hagens Berman** will keep the institution informed of major events and this will satisfy its duty. The institution may and should confer with us at any time it feels it is appropriate to do so. The institution must also agree to vigorously prosecute the litigation. To perform this function, you must hire lawyers experienced in class action litigation. **Hagens Berman** has national experience in class actions, and has vigorously prosecuted numerous securities fraud class action cases, with aggregate recoveries in the hundreds of millions of dollars. All costs in prosecuting a class action are advanced and paid by **Hagens Berman**, and the institution is not responsible for their payment whether we are successful or unsuccessful.

In short, the institution has minimal time commitments – but will be encouraged to provide its opinions and insights – and no financial responsibilities.

## AN INSTITUTION'S PRESENCE CAN DRAMATICALLY AFFECT THE LITIGATION

As lead plaintiff, an institution can have a profound effect on the ultimate success of the litigation. **Hagens Berman** will work closely with the institutional investor functioning as lead plaintiff to keep them apprised of all major developments in the litigation. The institution will be directly involved in major strategy and any potential settlement discussions.

As a lead plaintiff, the institution will have a direct influence on the strategies and ultimate disposition of the case. Formerly, the first knowledge that an institution received of the settlement of a case was the written notification from class counsel that the case had settled. At that point, the institution could only exclude itself from the class to proceed individually, formally object to the settlement by hiring attorneys and filing written motions with the court (an expensive and time-consuming process) or accept the settlement as is. As lead plaintiff, however, the institution will be a key member of the decision-making team. It will be able to help decide if a contemplated settlement is too low, or is reasonable under the circumstances. For institutions that have been unhappy with the returns from previous class action lawsuits in which they were members of the class, overseeing the process to ensure that they are happy with the ultimate results is a compelling reason to participate.

# Environmental Litigation

Environmental litigation on behalf of victims of toxic spills or pollution and other land use practices is also an increasing area of focus for **Hagens Berman**. The following is a profile of some of our cases.

**CHINOOK FERRY LITIGATION.** The firm represented a class of property owners who challenged Washington State Ferries' high-speed operation of a new generation of fast ferries in an environmentally sensitive area of Puget Sound. Two of the ferries at issue, the *Chinook* and *Snohomish*, caused environmental havoc and property damage, compelling the property owners to take action. After a successful preliminary trial, the trial court enjoined the operation of the ferries at high speed pending compliance with environmental laws, which was later overturned on appeal by the Washington Supreme Court. A SEPA study conducted in response to the suit confirmed the adverse environmental impacts of the fast ferry service. The trial court approved a $4.4 million settlement that is among the most favorable in the annals of class litigation in the State of Washington.

**GRAND CANYON LITIGATION.** The firm represented the Sierra Club in a challenge to a Forest Service decision to allow commercial development on the southern edge of the Grand Canyon National Park. Recently the trial court enjoined the project.

Exxon Valdez Oil Spill Cleanup
Exxon Valdez Oil Spill

 

**EXXON VALDEZ OIL SPILL LITIGATION.** The firm represents various classes of claimants, including fisherman and businesses located in Prince William Sound and other impacted areas, who were damaged by the worst oil spill in United States history. A $5 billion judgment was awarded by a federal court jury and a $98 million settlement was achieved with Alyeska, the oil company consortium that owned the output of the pipeline. The Ninth Circuit Court of Appeals recently overturned the punitive damage award and indicated the district court should reconsider the amount, but not the issue of whether punitive damages were appropriate.

**KERR-MCGEE RADIATION CASE.** The firm represented a class action on behalf of residents of West Chicago, Illinois, who have been exposed to radioactive uranium tailings from a rare earth facility operated by Kerr-McGee. The trial court has upheld plaintiff's claim, and Kerr-McGee unsuccessfully sought review in the 7th Circuit Court of Appeals. A medical monitoring settlement valued in excess of $5 million has received court approval.

**SEATAC LITIGATION.** The firm represented homeowners who claimed that the operation of the Seattle-Tacoma Airport destroyed their property values. The case was the largest inverse condemnation case asserted against a governmental agency in the Pacific Northwest. After a jury trial, the case settled.

**SKAGIT VALLEY FLOOD LITIGATION.** The firm represented farmers, homeowners and businesses who claimed damages as a result of the 1990 flooding of this community. The case,



Skagit Valley Flood



which had been in litigation for ten years and involved a jury trial of over five months in Snohomish County, was the longest jury trial ever conducted in Snohomish County. Following the entry of 53 verdicts against Skagit County, the trial Court entered judgments exceeding $6.3 million. Ultimately, the State Supreme Court reversed this judgment. Despite this reversal, the firm is proud of this representation and believes that the Supreme Court erred.

**RIO TINTO.** In a landmark case, the firm represents victims of Rio Tinto's mining operation on the island of Bougainville. To build the mine, Rio chemically defoliated, bulldozed and sluiced off an entire mountainside of rain forest. During the years of the mine's operations, billions of tons of toxic mine waste was generated and dumped onto the land and into pristine waters, filling major rivers with tailings, polluting a major bay dozens of miles away, and the Pacific Ocean as well. As a result of its flagrant disregard for the environment and the people of Bougainville, Rio dispossessed the people of Bougainville from their land, destroyed their culture and polluted their environment and lifestyle. Rio destroyed previously pristine rivers and land that provided substance and a way of life for the native people and went to the heart of their local culture. The pollution is so extensive that plaintiffs and members of the class have been exposed to toxic chemicals. In certain villages, the chemicals still remaining have caused the death and/or illness of residents.



Dead Forest Vegetation as a Result of Raised Water Table Levels Near Old Kuneka

Rio's actions on Bougainville were so egregious that they sparked an uprising designed to close the mine. When the uprising succeeded, Rio and the PNG government brought troops in to reopen the mine. Rio provided transport for these troops. After initial unsuccessful efforts, the PNG government, as the agent of or co-venturer of Rio and with the support and encouragement of Rio, instituted a military blockade of the island that lasted for almost ten years. The purpose of the military blockade was to coerce the Bougainville people into surrender so that the mine could be reopened. Both Rio and PNG made enormous profits from the mine and were anxious for it to operate, notwithstanding the resistance of the island's people. The blockade prevented medicine, clothing and other essential items from reaching the people of Bougainville. Hospitals were forced to close, women died needlessly in childbirth and young children died from easily preventable diseases. Rio's top manager of the Bougainville mine encouraged continuation of the blockade for the purpose of 'starving the bastards' out. This blockade directly caused the deaths of at least 10,000 people between 1990 and 1997. According to the Red Cross, the blockade killed more than 2,000 children in just its first two years of operation. By the time the war ended in 1999, 10% of the population of Bougainville, approximately 15,000 civilians, were killed.

The action alleges that Rio's conduct violated customary international law, including prohibitions against destruction of the right to life and health, and prohibitions against racial discrimination, and war crimes. Rio's conduct violated the settled standards for the protection of human rights and the environment recognized by customary international law and United States legal precedent. The plaintiffs seek redress under the federal Alien Tort Claims Act (28 U.S.C. § 1350).

# Drug, Healthcare and Dietary Supplement Litigation

Hagens Berman vigorously pursues litigation that improves the quality and fairness of our healthcare and prescription drug system. Representing individuals, governments and the nation's most forward-thinking public-interest groups, Hagens Berman seeks to shine the light of public scrutiny on these industries and their practices.

Second to none in this field, Hagens Berman attorneys have filed and argued suits against dozens of major drug companies, giving them extensive litigation and courtroom experience in these areas.

## PRESCRIPTION DRUG CASES

Prescription drug prices in the United States are the highest in the world and have become a significant barrier to increasing access to health care in the United States.

The overwhelming and dramatic rise in prescription drug prices has spurred several consumer interest and senior organizations to take an interest in rooting out collusive and unlawful profit-driven schemes within the drug industry. Hagens Berman seeks out, builds consensus and combines the efforts of these organizations to effectively battle unlawful pricing schemes, off-label marketing, and other illegal activities by drug companies, using the organizations' membership and research to bring significant pressure on defendants.

Some of the groups Hagens Berman represents include the American Federation of State, County and Municipal Employees (AFSCME), the California Public Interest Research Group (CALPIRG), Community Catalyst, the Congress of California Seniors, Connecticut Citizen Action Group, Health Care for All, the Prescription Access Litigation (PAL) Project, and USAction.

The prescription drug litigation pursued by Hagens Berman on behalf of these entities and individuals primarily focus on three distinct areas of misconduct by certain pharmaceutical companies: (i) unlawful price inflation; (ii) filing false secondary patents to prevent other drug manufacturers from bringing competing generic drugs on the market, commonly known as "patent evergreening," and taking other unlawful actions to block the distribution of lower-priced generic substitutes; and (iii) actively promoting drugs for uses that are not approved by the Food and Drug Administration, commonly known as "off-label" uses.

Hagens Berman is also very active in representing industry "insiders" in "whistleblower" cases under the federal False Claims Act.

In short, these cases seek to bring an end to these unlawful practices and compensate those who have been financially harmed as a result of the practices. The cases also have great potential to change industry behavior and in turn increase consumer access to vital drugs. Hagens Berman remains committed to combating illicit activities that harm American consumers and taxpayers who are forced to pay unfair prescription drug prices.

## CASES INCLUDE:

**AVERAGE WHOLESALE PRICE (AWP) LITIGATION** — With attorneys Steve Berman and Tom Sobol appointed as co-lead counsel, Hagens Berman has taken the lead in this important litigation challenging pharmaceutical companies' practice of fraudulently inflating reported Average Wholesale Prices (AWP) for drugs.

The suit claims that since the early 1990s, most of the nation's major pharmaceutical companies have engaged in a scheme to report fictitious AWPs for certain prescription pharmaceuticals, including many of those covered by Medicare and Medicaid. These fictitious AWPs result in inflated drug prices and billions of dollars in illegal profits reaped at the expense of American taxpayers and consumers.

In February 2004, the court rejected nearly every argument made by defendants in an effort to dismiss the case, and ordered the suit forward. Attorneys Steve Berman and Tom Sobol led the prosecution strategy and argued in court against the defendants' motion to dismiss.

**AVERAGE WHOLESALE PRICE NEVADA AND MONTANA** — Acting as special assistant attorney general, Steve Berman has filed suits on behalf of the states of Nevada and Montana, challenging several drug companies' practice of charging for Medicare drugs based on inflated Average Wholesale Prices.

**PHARMACY BENEFIT MANAGERS** — Filed on behalf of the Prescription Access Litigation (PAL) Project, the American Federation of State, County, and Municipal Employees (AFSCME), and the AFL-CIO, this suit alleges a pattern of illegal and secret dealings involving the four largest pharmacy benefit managers (PBM), who control more than two-thirds of the PBM market.

The lawsuit alleges that the four PBMs have taken illegal profits by steering health insurers and health care consumers into reliance on more costly drugs. It also contends that the four PBMs have negotiated rebates from drug manufacturers and discounts from retail pharmacies but haven't passed those savings on to health plans and consumers despite their promises to do so.

**LIPITOR** — Hagens Berman represents Lipitor consumers in a proposed class action claiming drug distributors Albers and Med-Pro violated the RICO Act and several consumer laws by scheming with unknown sources to deceive consumers into purchasing counterfeit Lipitor.

**OXYCONTIN** — Hagens Berman was among the first to file a class-action lawsuit against the drug maker Purdue Pharma on behalf of OxyContin consumers and several consumer groups, claiming the company took billions from customers by using fraudulent patents and sham lawsuits to block generic alternatives to OxyContin.

**NEURONTIN (PFIZER/PARKE DAVIS)** — Representing a broad coalition of consumer and public interest groups, Hagens Berman filed a lawsuit against Pfizer and its subsidiary, Parke-Davis, accusing the companies of circumventing FDA regulations to promote scientifically unproven off-label use of their drug.

**NEXIUM** — The suit alleges that the pharmaceutical company sought to preserve their market share and profits as the patent on their blockbuster drug, Prilosec®, was set to expire, by initiating a massive and misleading advertising and promotional campaign to deceive consumers into purchasing Nexium, a nearly identical new drug. Filed in California Superior Court in Los Angeles, the suit contends that the core of AstraZeneca's scheme was to use misleading information to convince consumers that Nexium was a significantly better drug than Prilosec. The pharmaceutical planned to redirect consumer loyalty from the flagship drug Prilosec to Nexium before the expiration of Prilosec's U.S. patent and the onslaught of competition from generic manufacturers that would deprive AstraZeneca of significant profits.

HAGENS BERMAN LLP

**340(B)** – In a suit filed in U.S. District Court in Alabama, Central Alabama Comprehensive Healthcare Inc., an organization that provides care for the indigent, claims major drug manufacturers have charged prices far above the maximum allowed by a 1992 law designed to provide more healthcare access to the homeless, the disabled, children, and the poor. The 1992 law requires drug companies to charge public hospitals and community health centers a price lower than prices paid by any other public or private purchaser. Although drug companies are required to give public hospitals the best price, they have steadfastly refused to disclose how they calculate prices, the suit notes. The suit seeks to represent all public hospitals and community health centers nationwide that were allegedly overcharged by the drug companies.

## OTHER HEALTHCARE CASES

In addition to Hagens Berman's work in prescription drug litigation, the firm is also leading efforts to end healthcare abuses in other areas such as hospitals, nursing homes and laboratory testing procedures.

### CASES INCLUDE:

**TENET HEALTHCARE** – Hagens Berman represents the California Congress of Seniors against Tenet Healthcare, contending that the company has engaged in a wide variety of illegal actions – ranging from conducting unnecessary medical procedures to adding outrageous mark-ups to medications – in an effort to boost corporate profits at the expense of their members and other healthcare consumers.

**ABBOTT LABORATORIES** – Hagens Berman represented women claiming that one of Abbott Laboratories' most common testing procedures returned flawed results, leading to unnecessary cancer treatments including chemotherapy and hysterectomies.

**MANORCARE** – Filed in California with the help of long-time nursing home activist Ila Swan, this suit claims ManorCare institutes high patient-to-staff ratios, causing significant Health Services violations, while falsely and deceptively advertising premium care.

## DIETARY SUPPLEMENTS AND NUTRACEUTICALS

The dietary supplement industry has seen exponential growth in the wake of the 1994 Dietary Supplements Health and Education Act, which largely removed FDA oversight of vitamins, minerals and herbs that are considered safe supplements to the human diet. Unfortunately, many unsavory companies have marketed supplements that are unsafe, and many have touted supplements through unsubstantiated claims of efficacy.

Hagens Berman represents consumers in national class-action cases involving dietary supplements and nutraceuticals. The suits seek to hold manufacturers and marketers accountable for deceiving consumers through unsubstantiated claims of efficacy and, in some cases, allegedly fraudulent billing practices.

### CASES INCLUDE:

**ENZYTE** – In cases filed in Ohio and California, these suits claim that Berkeley Nutraceuticals and Lifekey Inc. touted the "male enhancement" supplement Enzyte by using false claims of efficacy and otherwise engaged in unfair and deceptive conduct with respect to billing practices.

**CELLASENE** – Rexall markets a product called Cellasene, which purports to fight cellulite. Tens of thousands of women have purchased this product, which is in our view a scam — it does not fight cellulite. Hagens Berman filed the first case in the nation challenging the marketing of this product.

HAGENS BERMAN LLP

The FTC has recently filed a similar action against Rexall.  The case recently settled with a significant recovery for consumers.

# Insurance Litigation

Hagens Berman has built an outstanding reputation litigating class-action cases against the biggest insurance companies in the country and large organizations that offer and sell service-specific insurance to their customers. Hagens Berman attorneys have forced them to stop overcharging policyholders and consumers; prevented insurance companies from reducing policyholders' benefits without a valid reason; recouped monies unfairly paid; secured unlimited coverage because the insurer broke the law when selling the policies: compelled stronger and more accurate disclosures when unearned and unwarranted "fees" are imposed; recovered monies paid because disclosures were inadequate; and eliminated numerous insurance companies' practices that are not in the best interest of insureds and policyholders.

Specifically, we have caused over a dozen insurance companies to revise their policies and endorsements so as reflect and disclose the true (and higher) coverage that they owe their insured policyholders. We have pioneered cases seeking additional coverage because the insurance companies never offered the coverage that was required by law, electing instead to provide a narrow, more restrictive option. Recently, we caused a major insurer to drop its practice of making consumers prove that they paid their deductibles in full before providing coverage. In another instance, we sought and won additional coverage for class-member policyholders for economic injuries resulting from accidents. For every insured policyholder who received a defective disclosure form while being sold the policy, Hagens Berman secured additional coverage - even though these policyholders selected minimum coverage at the point of purchase. As part of this case, Hagens Berman exposed deficiencies in insurance company's explanations, offers, and policies that resulted in substantial sums being paid to policyholders, who never were offered the coverage required by law.

In *Clark v. State Farm*, we prevailed at the Tenth Circuit, with the court ruling that additional benefits were mandatory if a correct offer was not made. Through extensive research of forms and policy documents, we will show that anyone insured by a State Farm policy covered under a minimum policy from 1973 to date is entitled to extra coverage. These unlimited time and amount benefits will help any insured suffering extensive wage loss or incurring major medical expenses, even if paid by a health insurer or Medicaid. Because of the State Farm's alleged failure to make the offer required by law of additional Personal Injury Protection (PIP) benefits, and not acting reasonably after it knew of the obligation, we allege that State Farm committed bad faith. Under Colorado law, insureds are entitled to treble damages, 18% interest, damages for bad faith, punitive damages, and attorneys' fees.

*Fincher v. Prudential*: We alleged that Prudential is illegally limiting the insurance coverage available. We allege that Prudential violated the law by not making the offer required and by

HAGENS·BERMAN·LLP

unfairly limiting the aggregate benefits that would be paid. The Tenth Circuit Court of Appeals affirmed our theory. As a consequence, this putative class action is going forward seeking unlimited benefits for anyone with a minimum insurance policy who has extensive wage losses or medical expenses resulting from an automobile accident.

We are litigating a variation on these theories (Clark and Fincher) against many of the major insurers in the State of Colorado. And despite no-fault coverage being eliminated, those with serious medical bills and/or extensive wage loss will continue to benefit from our efforts for years to come.

Along with our co-counsel, Hagens Berman sued four major Colorado insurers in class action cases. We allege that they refuse to pay the full price of medical bills arising from an auto accident. These insurers claimed that the bills were too high. The insurers only paid a portion of the bills, basing their decision on a database that our suit claims is illegal under Colorado law. We seek to recover all monies not paid. In addition, we seek an interest payment of 18%, treble damages, bad faith damages, and punitive damages for all class members. Under the No Fault Act, the insurers must pay all reasonable bills. Moreover, the database used is designed to assess what is customary, not what is reasonable, and thus cannot be used to "reprice" these bills.

HAGENS BERMAN LLP

# The Partners



## STEVE W. BERMAN

**Direct Dial: (206) 224-9320**

**Email: steve@hagens-berman.com**

**Hagens Berman's** managing partner, Steve helped found the firm in 1993. He has served as lead or co-lead counsel in securities, consumer, products liability and antitrust and employment class actions in the Northwest and throughout the country. He has prosecuted numerous class action and complex litigations involving entities in such notable and high profile matters as the **Washington Public Power Supply System, Exxon Valdez Oil Spill, Michael Milken Litigation, Enron Litigation, Tobacco Litigation,** and **Visa/MasterCard Litigation**.

Steve's current key cases include **AWP, Rio Tinto, J.P. Morgan, Exxon-Mobil, Enron, Grass Seed Burning, Tenet Healthcare, UAL ERISA Litigation, PBM, IRI v. A.C. Nielsen,** and **Nexium**.

Steve's successes include obtaining a settlement of $92 million in the **Boeing Securities Litigation,** representing stock and bondholders in the **Bonneville Pacific Securities Litigation** resulting in settlements exceeding $30 million, and gaining approval of a $290 million settlement in the **Louisiana Pacific Siding Litigation,** the largest product liability settlement in Pacific Northwest history. In the **WPPSS Securities Litigation,** Steve represented the class plaintiff bond purchasers in the largest securities trial in U.S. history. As well as being a member of the trial team, the lead counsel designated him as a 'core group' member alongside a group of class plaintiffs and Chemical Bank attorneys charged with prosecuting the case. The case resulted in a settlement exceeding $850 million, the largest recovery in a securities class action at the time.

Steve's innovative approaches to litigation have earned him significant recognition. When beneficiaries of state employee pension funds refused to pursue sums from **Michael Milken's** misappropriation of warrants, Steve stepped forward, pioneering the Milken action and its unique approach to recovery. As co-lead counsel in multi-state class actions against **Blue Cross,** Steve uncovered the Blue Cross' breach of fiduciary duties owing to plan participants. His discovery led to the Blue Cross being sued in dozens of states and lawyers throughout the country emulating his approach.

Perhaps most notably, in the landmark **Tobacco Litigation,** Steve served as a special assistant attorney general for the states of Washington, Arizona, Illinois, Indiana, New York, Alaska, Idaho, Ohio, Oregon, Nevada, Montana, Vermont and Rhode Island in prosecuting major actions against the tobacco industry.

A principal in the ground-breaking settlement with Liggett and the proposed national settlement, Steve was one of only two private attorneys acting as members of the negotiating team. He conceived the idea to use Liggett as the whistleblower and secured the cooperation of Bennet LeBow, Liggett's CEO, as well as insisting that Liggett waive all claims of attorney-client privilege. Steve also negotiated the settlement that required Liggett to admit what the industry has denied to this day: smoking causes cancer and heart disease; nicotine addicts; and the industry targets children.

Liggett's admissions, the cooperation of LeBow, and the release of previously privileged documents were instrumental factors in driving the industry to settlement. Liggett's 'plea of guilty' added momentum to the 1997 proposed national settlement, which led to the eventual 1998 $206 billion multi-state settlement.

The announcement of the final settlement found Steve in his ninth week of trial presenting the state of Washington's case to a jury. His successful handling of the bulk of the trial earned him great respect and subsequently some of Washington state's leading trial lawyers hired Steve to try a certified class action brought by union trust funds against tobacco. The book, *People v. Big Tobacco,* describes his role in the **Tobacco Litigation**.

Other notable actions surround the **Morrison Knudsen Securities Litigation, Contact Lens Disposable Antitrust Litigation** and **Piper Jaffray Closed-End Funds Litigation** in which he obtained a settlement valued at nearly $60 million. Steve's cases have also involved corporate entities such as **Egghead, Foodmaker, SuperMac, Immunex, Digital Systems,** and **Aldus.**

More recently, **Microsoft** recognized Steve's experience and expertise when the company retained him to be part of the core national team representing the company in antitrust class actions arising from Judge Jackson's Findings of Fact in the Department of Justice antitrust case against the company.

In April 2000, the *National Law Journal* listed Steve as the top litigator in the state and, in June, named him as one of the 100 most powerful lawyers in the nation. In January 2001, *Seattle Magazine* featured him in an issue profiling the top lawyers in Seattle.

Steve graduated from the University of Michigan in 1976 and earned his law degree from the University of Chicago Law School in 1980.

## JENIPHR A.E. BRECKENRIDGE

Direct Dial: (206) 224-9325
Email: jeniphr@hagens-berman.com

Jeniphr joined the firm to focus on consumer and securities litigation. Currently, she remains heavily involved with the firm's **Enron** case. Other notable cases include **Boeing Securities Litigation, Raytheon Litigation, Abbott Drug Litigation** and **Tobacco Litigation.**

In the **Tobacco Litigation,** Jeniphr spearheaded the **Hagens Berman** effort to develop facts surrounding defendant British American Tobacco Industries and its subsidiaries, including Brown & Williamson and BATCo. Reviewing BAT documents held in a repository in Guildford, England, she explored issues of American court jurisdiction over BAT entities; BAT participation in the worldwide industry conspiracy; and BAT and Brown & Williamson lawyer involvement in the conspiracy, as well as other issues related to liability.

Pursing other discovery issues related to Brown & Williamson and BAT, Jeniphr successfully and strongly opposed motions to compel the depositions of two top BAT executives, Martin Broughton and Urlich Herter, halting the development of the story of BAT's acquisition of Farmers. Later, she helped identify state exhibits in Arizona and Washington. Coordinating with defendants and the court, she also managed the firm's efforts in Washington to admit state exhibits and respond to and oppose the admission of certain defense exhibits, including addressing certain evidentiary issues with the court.

Jeniphr earned her bachelor's degree from Mt. Holyoke College and graduated from Georgetown University with a master's degree in political theory and economics. Notes and Comments editor of the *Maryland Law Review*, she graduated from the University of Maryland Law School in 1988.

## ROBERT B. CAREY

**Direct Dial: (602) 224-2626**

**Email: rcarey@hagens-berman.com**

Joining **Hagens Berman** in 2002, Rob serves as the managing partner for the firm's Phoenix office. Rob's practice includes handling numerous class action lawsuits against a variety of organizations and companies, including **California Lottery Litigation, Texas Hyundai Litigation,** and a case surrounding the state of Arizona's tax credit and grant policies for buyers and dealers of alternative-fuel vehicles. In a current class action, Rob confronts insurance companies for not providing statutorily required coverage or notices, charging for obligated coverage, or not paying enough for cars whose value declined the completion of repairs.

Previously, Rob led the Carey Law Firm as managing partner, focusing on personal injury, medical malpractice and other plaintiffs' cases. In addition to arguing several high-profile cases in various state Supreme Courts and Courts of Appeals, he litigated multi-billion dollar claims by counties for damages stemming from tobacco-related illnesses and more than two dozen consumer, insurance and financial class actions in various states. Rob also served as judge pro tempore in Maricopa County Superior Court and as special counsel for **Hagens Berman** suits to recover Medicaid and statutory damages in landmark public health litigation.

In addition, from 1990 to 1996, Rob oversaw all major legal, policy, legislative and political issues for the Arizona attorney general's office as the first assistant attorney general. Instrumental in several suits, Rob obtained a $4 billion divestiture, a landmark $165 million antitrust settlement, and won numerous consumer and tort cases. He also drafted and spearheaded passage of Arizona's law requiring the DNA testing of all sex offenders and instituted a penalty requiring that criminals pay the cost of victims' rights. During this time, Rob drafted the bulk of the federal Prisoner Litigation Reform Act of 1995 for Senators Bob Dole and Jon Kyl, as well as the counterpart Arizona act that served as a model for other states. He also served as a former staff member and intern for U.S. Senator John McCain, when McCain was a congressman.

Recognized by the judges of the Superior Court of Arizona in Maricopa County for outstanding contributions to the justice system, Rob frequently presents at national conferences and teaches tort, contract and public policy courses, most recently at the University of Colorado's graduate business school.

Rob earned his bachelor of science from Arizona State University and graduated from the University of Denver with both a law degree and a master of business administration.

## ERIN K. FLORY

**Direct Dial: (206) 224-9332**

**Email: erin@hagens-berman.com**



Erin joined **Hagens Berman** to practice securities and class action litigation. His writing and legal analysis have helped establish the high standards that exemplify **Hagens Berman's** written court submissions which have been vital to the firm's rise to national prominence. Playing a prominent role in **Hagens Berman's** securities cases, Erin's cases include **Boeing, Boston Chicken, Einstein/Noah Bagel, Midcom, Wall Data, Immunex** and **Bonneville.**

Before **Hagens Berman,** Erin worked for a leading corporate defense firm, leaving in 1991 to represent the interests of injured investors, consumers, workers and homeowners in their challenges to corporate misconduct. After obtaining his law degree, he clerked for Judge Thomas S. Zilly of the United States District Court for the Western District of Washington and for the Washington State Court of Appeals.

Erin graduated summa cum laude and Phi Beta Kappa from the University of Washington in 1983 with a degree in economics. He earned his law degree from the University of Washington Law School, where he served as an executive editor of the *Washington Law Review*.

## CARL H. HAGENS

**Direct Dial: (206) 224-9321**

**Email: carl@hagens-berman.com**

Carl Hagens joined Steve Berman to found **Hagens Berman** in 1993. His practice areas include a wide range of complex commercial litigation representing both plaintiffs and defendants in areas including antitrust, securities, breach of contract, injunctive and other equitable proceedings.

Some of his accomplishments include successfully representing Westin in the **Hotel Telephone Charges Litigation**, recovering $13.6 million in **Seafirst Securities Litigation**, successfully representing independent asphalt pavers in the **Spokane Asphalt Antitrust Litigation**, and recouping the near entirety of bondholder's original investment in the **Badger Mountain Securities Litigation**.

After successfully defending **Associated Grocers** in the **Beef Antitrust** and **Waremart Antitrust Litigation**, Carl represented them against the state of Washington resulting in the State Supreme Court declaring sections of the state's Business and Occupation Tax unconstitutional.

The Ninth Circuit Judicial Conference's lawyer representative from 1989-1991, Carl is also a member of the Continuing Legal Education Committee of the Federal Bar Association and a member of the special commission to study and report antitrust laws for the Washington State Bar Association. A 1967 graduate of the University of California, Hastings College of the Law, Carl was admitted to practice in California in 1967 and in Washington in 1968.



## SEAN R. MATT

**Direct Dial: (206) 224-9327**

**Email: sean@hagens-berman.com**

Sean's field of practice involves consumer, insurance, products, antitrust, environmental, employment, securities and labor class actions and other complex litigation.

Sean is actively involved in the **Pharmaceutical Industry Average Wholesale Price** litigation. He participates in the management of the discovery process for both the MDL case and the individual state actions in Nevada and Montana. Sean also oversees the third-party subpoena practice and is part of the team that prepares for and conducts depositions. From time to time, Sean will also work on legal research and writing projects. He undertakes similar duties in the firm's **Pharmacy Benefit Managers** litigation.

Sean is also active in the firm's **Dietary Supplement/Nutraceuticals** litigation, a practice area focusing on unsubstantiated claims of herbal efficacy and, in some cases, alleged fraudulent billing practices.

In the **Tobacco Litigations**, Sean was part of Hagens Berman's team that successfully represented 13 states and returned billions of dollars in recovery. Sean assisted with client liaison responsibilities, working closely with Assistant Attorneys General in Oregon, Ohio, Arizona, Alaska and New York. He assisted in briefing and arguing motions to dismiss and worked on various discovery issues, including discovery requests, briefing on discovery motions and appearances at discovery hearings. Sean also worked on expert disclosure statements and the preparation of testimony for a variety of expert witnesses.

In the **Washington State Fast Ferry** litigation, Sean ran the case on a day-to-day basis to consummate one of the most favorable settlements ever in class litigation in the State of Washington. Sean also works on the firm's **California Electricity Fraud** cases, including participation in the firm's representation of the Snohomish Public Utility District against numerous power generators and marketers alleged to have caused skyrocketing energy prices through fraudulent market gaming techniques.

Over the years, Sean's primary focus has been on multi-state and nationwide class actions pending in courts throughout the country, including Washington, other Western states, and states in the Midwest and South. In addition to state and federal courts in Washington, he has appeared in courts in California, Alaska, Montana, Idaho, Oregon, Arizona, Nevada, Illinois, Ohio and Tennessee. His experience in multi-state and nationwide class actions includes organizing and developing a standardized approach to prosecuting individual class cases across many states involving the same defendants and similar factual and legal issues.

Sean received a degree in finance from Indiana University with Highest Distinction in 1988. After college, he worked as an employee benefit consultant. Sean graduated Order of the Coif from the University of Oregon School of Law in 1992 and was an associate editor of its law review. While a law student, Sean co-authored the comment, "Providing a Model Responsive to the Needs of Small Businesses at Formation: A Focus on Ex Ante Flexibility and Predictability," 71 *Oregon Law Review* 631 (1993).

He is admitted to practice in the State of Washington, the U.S. District Court for the Western District of Washington and the Ninth Circuit Court of Appeals. Sean has been with Hagens Berman since its creation.

## DAVID S. NALVEN

**Direct Dial: (617) 475-1953**

**Email: davids@hagens-berman.com**

David Nalven joined **Hagens Berman** in 2004 as a partner in the Boston office. David's practice includes handling numerous class action lawsuits in the areas of prescription drug pricing, securities fraud, insurance fraud, and consumer protection.

From 1999 to 2004, David served as Chief of the Business and Labor Protection Bureau in the Massachusetts Attorney General's Office. David oversaw a staff of more than 100 on all cases and initiatives involving healthcare fraud, insurance fraud, workplace offenses, and other civil and criminal business matters. During his five years with the Attorney General's Office, David's notable responsibilities included:

- Serving as lead or supervisory counsel on all investigations and litigation concerning prescription drug pricing and other healthcare fraud matters.

- Prosecuting insurance fraud violations by the largest workers compensation law firm in Massachusetts, and obtaining guilty plea and committed-time sentencing agreements against the partners of the firm.

- Directing the investigation and negotiating the resolution of wide-ranging violations of child labor laws against the owner of several dozen Dunkin' Donuts locations, resulting in the largest child labor penalty in Massachusetts history.

- Advising the Massachusetts Pension Reserve Investment Management Board, which oversees the state's $30 billion public employee pension fund, on securities fraud litigation matters.

David earned his B.A. magna cum laude in English from the University of Pennsylvania in 1980 and graduated from New York University School of Law in 1985. After law school, David served as a law clerk to the Honorable John R. Gibson of the United States Court of Appeals for the Eighth Circuit.

David is an editor of the *Boston Bar Journal*, and has been a frequent speaker on business litigation and corporate responsibility issues in conferences sponsored by professional associations (American Bar Association, Massachusetts Continuing Legal Education), industry groups (Massachusetts Association of Healthcare Administrators), and organized labor (AFL-CIO, Massachusetts Building Trades Council).

## CHRISTOPHER A. O'HARA

**Direct Dial: (206) 268-9351**

**Email: chriso@hagens-berman.com**

Chris joined **Hagens Berman** in 1997, practicing for nearly five years in the firm's Phoenix office. He recently returned home to the Seattle office with a concentration on antitrust, consumer, securities and civil rights class actions.

Currently, he serves as plaintiffs' counsel in the **JP Morgan Chase Litigation**, price fixing litigation in the **Linerboard and Laminates industries**, as well as assisting with the national FCRA action against **Trans Union** and **MCI**. A member of the firm's **Microsoft** defense team, Chris also currently investigates allegations of racial discrimination and "redlining" in **Chrysler**'s automobile loan practices in Illinois.

While in Phoenix, Chris deposed more than a dozen of big tobacco's expert witnesses, research scientists and marketing executives for the **Tobacco Litigation**, focusing predominantly on the Arizona case. He also defended the depositions of Arizona's national and local expert witness, while contributing to all aspects of discovery and motion practice. More recently, Chris played a leading role in the firm's successful defense of the state of Arizona against a claim brought by several Arizona Counties in the aftermath of the state's tobacco litigation.

Prior to joining **Hagens Berman**, Chris focused on property loss subrogation and professional liability defense at a Seattle area law firm.

He earned a bachelor's degree in political science and French language and literature from the University of Washington in 1987. Chris subsequently graduated cum laude from Seattle University School of Law and is admitted to practice in state and federal courts in both Arizona and Washington, as well as the U.S. Ninth Circuit Court of Appeals.



## CLYDE A. PLATT

**Direct Dial: (206) 224-9324**

**Email: clyde@hagens-berman.com**

Clyde joined **Hagens Berman** to practice securities fraud litigation, audit malpractice litigation and products liability litigation. Representing company shareholders in diverse industries such as construction, telecommunications and food service, he obtained a $400 million settlement for a lengthy audit malpractice action on behalf of federal banking regulators arising from the failure of a system of east Tennessee banks.

Clyde played a major role in the **Boeing Digital Systems, Aldus, Heart Technology, Foodmaker, Wall Data** and **ProCyte** actions and currently works on the **Raytheon** and **Enron** cases, two of the largest cases now pending in the country.

Before **Hagens Berman,** Clyde clerked for the Ninth Circuit Court of Appeals in Texas.  Clyde graduated summa cum laude from the University of Washington, after serving in the United States Coast Guard, earning his law degree from the University of California, Davis, in 1985.  He is admitted to practice in Washington, Texas, California and Nevada and has appeared in courts in several other jurisdictions.

## GEORGE W. SAMPSON

**Direct Dial: (206) 224-9345**

**Email: george@hagens-berman.com**

In 1994, George joined **Hagens Berman** to focus on antitrust and consumer class actions.  Currently serving as co-lead counsel in the **Disposable Contact Lens Litigation** and the **Visa** and **MasterCard** debit card case, he also helped develop antitrust claims in the **Tobacco Litigation.**

Prior to joining **Hagens Berman,** George served as chief of the Antitrust Bureau for the New York Attorney General's Office.  George oversaw a 22 person staff and managed case selection and investigation for all civil and criminal prosecutions.  He also served as attorney general liaison to the federal-state Executive Working Group-Antitrust. His position as chief involved a heavy trial practice, primarily in federal courts and often in conjunction with several states.

During his ten years with the Antitrust Bureau, George's notable cases included winning a $7.8 million jury verdict in a highway bid rigging trial, serving as lead counsel for New York and obtaining a $30 million settlement in insurance antitrust litigation, and negotiating a $15 million return to consumers in a resale price maintenance settlement with **Nintendo.**

George earned his bachelor's degree in economics from Cornell University and graduated from New York University School of Law in 1977.  A member of both the Washington and New York state bars, he sits on the Executive Committee of the Antitrust and Consumer Protection of the Washington State Bar Association and frequently speaks on antitrust issues.  George is admitted before the U.S. Supreme Court and numerous federal courts of appeal.

## ANTHONY D. SHAPIRO

**Direct Dial: (206) 268-9352**

**Email: tony@hagens-berman.com**



Tony joined **Hagens Berman** and now concentrates his practice on antitrust matters and personal injury cases in addition to securities and general commercial disputes.  His personal injury practice includes cases of wrongful death, brain injury, and catastrophic personal injury matters resulting from medical malpractice, construction site, workplace and automobile accidents, as well as product liability.

His work prosecuting plaintiffs' claims against the Alyeska Pipeline Service Company resulting from the 1989 **Exxon Valdez Oil Spill** ultimately resulted in a $98 million settlement for plaintiffs.  Notable antitrust class actions in which Tony has worked include **Linerboard Antitrust Litigation, Brand Name Prescription Drug Antitrust Litigation, Carbon Dioxide Antitrust Litigation, Carpet Antitrust Litigation, Infant Formula Antitrust Litigation, Baby Food Antitrust Litigation, Scouring Pads Antitrust Litigation, Medical X-Ray Film Antitrust Litigation, High Fructose Corn Syrup Antitrust Litigation, Visa/MasterCard Antitrust Litigation, Commercial Tissue Products Antitrust Litigation, Flat Glass Antitrust Litigation, Lease Oil Antitrust Litigation,** and **Bromine Antitrust Litigation.**

Prior to leading the **Hagens Berman** personal injury litigation practice, Tony honed his courtroom skills in the Washington state prosecuting attorney's office, where he represented the state in more than 50 serious felony jury trials including some of the state's most difficult and high-profile cases. Following his position at the prosecuting attorney's office, Tony joined Schweppe Krug & Tausend, then Seattle's oldest law firm, where he used his extensive courtroom experience to serve personal injury clients. He subsequently founded Rohan Goldfarb & Shapiro, a firm focusing on personal injury cases as well as commercial litigation and antitrust work.

Very involved in issues concerning juvenile diabetes, Tony served as a board member of the Western Washington chapter of the Juvenile Diabetes Foundation for four years.

Tony was given an AV rating by Martindale-Hubbell, the highest rating a lawyer can obtain, indicating a very high to preeminent legal ability and exceptional ethical standards as established by confidential opinions from members of the Bar.

Tony graduated from Colgate University with honors and earned his law degree from Georgetown University Law Center in 1982.



### THOMAS M. SOBOL

**Direct Dial: (617) 475-1950**

**Email: tom@hagens-berman.com**

Tom leads **Hagens Berman's** Boston office and joined the firm in June 2002. Focusing on complex civil litigation, he has represented consumers, injured persons and clients from many different industries, including injected molded plastics, x-ray inspection detection systems, health care, financial services, affordable housing and waste management and disposal. His extensive trial experience includes such wide ranging areas as tobacco, toxic torts, antitrust, intellectual property, industrial plant construction, housing finance and development, medical malpractice, civil rights, and white and blue criminal defense.

Currently, Tom focuses on litigation seeking to remedy past overcharges for prescription drugs and make pharmaceuticals more accessible to all consumers. He serves as co-lead council in several lawsuits against major pharmaceutical companies, including **Lupron Marketing and Sales Litigation, Ciprofloxacin Hydrochloride Antitrust Litigation, Buspirone Antitrust Litigation,** and action verses the **Schering-Plough Corporation** for exploitation of direct to consumer advertising. Tom also served as the lead counsel and original participant in the Prescription Access Litigation ("PAL") project, the largest coalition of healthcare advocacy groups to fight illegal, loophole-based overpricing by pharmaceutical companies. In other successes, Tom led Massachusetts' $8.2 billion settlement in the **Tobacco Litigation**.

Prior to **Hagens Berman,** Tom served as a partner at Lieff Cabraser Heimann & Bernstein LLP. He also served as judicial clerk for then-Chief Justice Allan M. Hale of the Massachusetts Appeals Court from 1983 to 1984.

Tom sits as chairman of the board of the Vietnam Veterans Workshop, Inc. affiliated with the New England Shelter for Home Veterans (NESHV). A national model for homeless services, NESHV is one of the largest private organizations delivering services to homeless veteran families and other veterans in need. Tom also spends time as a member of the Board of Health Law Advocates, Inc. (HLA), a non-profit legal organization that assists in health access for the poor, alongside leaders in the Massachusetts healthcare community, including former Governor Michael Dukakis.

Elected to Phi Beta Kappa in 1979, Tom graduated summa cum laude from Clark University in 1980. He graduated cum laude from Boston University School of Law in 1983. Named one of New England's Top Ten Litigators by the *National Law Journal*, Tom remains a member of the bars of

Massachusetts, Rhode Island and is admitted to the United States District Court for the Districts of Massachusetts and Rhode Island, as well as the United States Court of Appeals, First Circuit.



Jim Solimano and Steve Berman
During Trial of Washington State
Tobacco Case

## JAMES P. SOLIMANO

**Direct Dial: (206) 224-9322**
**Email: jim@hagens-berman.com**

Jim joined **Hagens Berman** to work on securities, class action, consumer fraud and complex litigation.

Currently, Jim represents a class of homeowners who suffered losses of their houses and properties in the second worst landslide in U.S. history in the **Kelso Landslide Litigation**. He also represents insureds in a certified class against **State Farm** over retroactive denial of PIP benefits and workers in the **Denny's** wage and hour case. His securities litigation work has included representing investors in the **Egghead, Intermec** and **Nordstrom Securities Litigations**.

Significant cases include representing plaintiff bond purchasers in the **WPPSS Securities Litigation**, the largest securities trial in U.S. history and serving as lead counsel for **Chemical Bank** for several cases including a $55 million recovery in "Cost Sharing Litigation."

In the **Tobacco Litigation**, Jim helped coordinate the firm's work with expert witnesses in the areas of addiction, antitrust, causation, cigarette design, damages, epidemiology, ethics (business, legal and medical), Medicaid and youth marketing. His work included identifying areas of expert testimony, interviewing and retaining potential experts, assisting experts in the development of testimony, obtaining the material on which experts relied, assisting them in preparing reports, preparing them for deposition and trial testimony, coordinating expert discovery and preparing for cross-examination of defendants' experts. He also worked extensively with consulting experts to collect and prepare the voluminous claims data used in the damage models. In addition, Jim participated extensively in the briefing and argument of the many pretrial dismissal, discovery, summary judgment and in limine motions. During the Washington trial, he prepared witnesses for direct testimony and cross-examination, as well as briefing on trial motions.

After graduating from Franklin & Marshall College in 1979, Jim earned his law degree from the National Law Center at George Washington University. Jim has appeared in the Washington Supreme Court and Court of Appeals, the Ninth Circuit Court of Appeals and in many federal district courts throughout the country.

## CRAIG R. SPIEGEL

**Direct Dial: (206) 268-9328**
**Email: craig@hagens-berman.com**

Craig focuses his practice on class actions primarily in employee litigation. Recent cases include actions against **Abbott Laboratories, Burlington Northern Santa Fe Railway Company, BP Oil Supply** and **Boeing Race Litigation**.

Before joining **Hagens Berman**, Craig served as co-counsel for plaintiffs in numerous class actions. As lead counsel for several hundred investors who lost substantial sums of money from investments with **Property Mortgage Company**, he obtained an $8 million settlement. Craig also helped represent a class of investors that lost millions of dollars investing in the production of oil after the court certified a class based on his argument.

In litigation with **AT&T**, Craig's briefs and oral argument compelled the Ninth Circuit to reverse a summary judgment, obtaining a substantial sum for his client, a company that alleged that **AT&T** unlawfully changed its policies to drive the company out of business. In another notable case, Craig

served as co-counsel for a family of three that was rendered homeless when a Santa Barbara businessman towed away their trailer, claiming it was on his land, reselling the vehicle and most of their possessions. He helped obtain a jury verdict of $225,000 for the family, after another attorney had obtained a $15,000 non-binding judicial arbitration award.

Craig graduated summa cum laude from St. Olaf College in 1975 and cum laude from Harvard Law School in 1979. Admitted to practice before several federal district and appellate courts, he is a member of the California, Illinois and Washington bars.

## JEFFREY T. SPRUNG

**Direct Dial: (206) 224-9329**

**Email: jeffs@hagens-berman.com**

Joining **Hagens Berman** in 1994, Jeff focuses his practice on consumer class actions and 'whistleblower' matters, primarily involving Medicare, Medicaid and defense contractor fraud. Currently, he works on the **Boeing Gender Discrimination** class actions that the firm is handling in four of Boeing's five largest sites in the country. Other notable cases include the **Compaq Computer Litigation, Fen/Phen Litigation** and international human rights cases.

Prior to joining the firm, Jeff served as an assistant U.S. attorney in the U.S. Attorney's office in the District of Columbia, where he handled civil fraud and government enforcement actions. He won the first civil suit for mail, wire and bank fraud brought in the District of Columbia, as well as the first civil suit brought by the government to punish insider trading in the mortgage-backed securities market.

Jeff graduated magna cum laude with his bachelor of arts from the University of Michigan in 1981 and received his law degree from the University of Chicago Law School in 1984. Admitted to practice in Washington and the District of Columbia, he has appeared in numerous cases before United States district courts and courts of appeals.

## ANDREW M. VOLK

**Direct Dial: (206) 224-9371**

**Email: andrew@hagens-berman.com**

Andrew joined the firm in 1996 to work on major class action cases and ERISA litigation. Extensively involved in the **Tobacco Litigation,** he wrote many of the major briefs on behalf of the states represented by **Hagens Berman.** In addition, he helped research and develop legal theories used in the action, as well as drafting and amending complaints. Andrew also headed the successful attack on defendants' claims that millions of documents were privileged. As a result, Washington state gained access to key documents—long hidden by the tobacco companies—that supported the state's allegations that the tobacco companies intentionally targeted children, intentionally hid their knowledge of the dangers of tobacco and lied to consumers and government regulators alike.

Andrew currently works on ERISA cases for breach of fiduciary duties on behalf of current and former employees of **Enron, IPALCO** and the **Montana Power Company**; gender discrimination cases on behalf of **Boeing** employees at facilities in Kansas and Missouri; RICO cases on behalf of employees of **IBP, Tyson Foods, Zirkle Fruit Co.** and **Matson Fruit Company**; and the certified class action against **UPS** arising from its sale of Excess Value Insurance Coverage.

Prior to joining **Hagens Berman,** Andrew taught legal writing and research at the University of Oregon School of Law. He also spent three years as a staff attorney at the Criminal Appeals Bureau of the Legal Aid Society in New York City.

Andrew earned his undergraduate degree from Columbia University. He graduated cum laude from Cornell Law School in 1991 and served as an articles editor of the Cornell International Law Journal. He is admitted to practice in New York, Oregon and Washington.

# Senior Lawyers

### ELIZABETH A. FEGAN

Direct Dial: (312) 762-9235

Email: beth@hagens-berman.com

Beth joined **Hagens Berman** in 2004 with the opening of the new Chicago office.

Before **Hagens Berman**, Elizabeth was a partner at The Wexler Firm LLP in Chicago. Her legal work consisted of finance lending discrimination lawsuits, pharmaceutical and antitrust litigation, civil rights charges and suits, and auditing and accounting malpractice litigation. She also served as legal writing instructor at the Loyola University Chicago School of Law.

While previously practicing at Shefsky & Froelich, Ltd. in Chicago, Beth served in several local government appointments and on a special master team in federal and state court. The local government appointments included positions as special assistant corporation counsel to the city of Chicago, the Chicago Park District and to the Public Building Commission of Chicago. Her private work has included complex commercial litigation, antitrust, civil rights, fraud and consumer fraud, and contract actions.

Beth received her law degree from Loyola University Chicago School of Law. While there, she was editor at large of the Loyola Law Journal in which she published "Home Rule Hits the Road in Illinois: American Telephone & Te

### TIMOTHY A. SCOTT

Direct Dial: (312) 762-9233

Email: tims@hagens-berman.com

Tim joined **Hagens Berman** in 2004 with the opening of the new Chicago office.

Prior to joining **Hagens Berman**, Tim practiced law at The Wexler Firm LLP in Chicago. His work included prosecuting complex class-action cases including antitrust, consumer fraud, securities, and ERISA litigation. Tim previously practiced at Skadden, Arps, Slate, Meagher & Flom in Chicago, where he represented corporate plaintiffs and defendants in complex class-action, mass tort, products liability, insurance, environmental, and commercial litigation in state and federal courts.

Tim received a bachelor's in Sociology/Anthropology and Spanish from Knox College in Illinois, and earned his law degree from the Chicago-Kent College of Law.

# The Associates

## IVY D. ARAI

**Direct Dial: (206) 268-9358**

**Email: ivy@hagens-berman.com**

Ivy joined **Hagens Berman** in 2002. Currently, her work focuses on the class action employment discrimination suits against **The Boeing Company** and the **Tenet Healthcare** case.

Prior to joining **Hagens Berman**, Ivy primarily practiced employment and health care law. Additionally, she participated in the King County Bar Association's Homeless and Newcomers Project resolving wage claims for local low income and immigrant workers. During law school, Ivy worked as a judicial extern for Judge Thomas S. Zilly of the United States District Court for the Western District of Washington. Ivy also counseled low income and immigrant workers regarding employment and labor issues as an extern for the D.C. Employment Justice Center.

Her publications include "The Silent Significant Minority: Japanese-American Women Evacuation and Internment During World War II" found in Nicole Dombrowski's book, *Enlisted With or Without Consent: Women and War in the 20th Century*.

Ivy graduated cum laude from Princeton University in 1997 with a bachelor of arts in American history and a certificate in African-American studies. She earned her law degree from Georgetown University Law Center in 2000 where she served on the *Georgetown International Environmental Law Review*. She is admitted to practice law in the state of Washington.

## ELAINE BYSZEWSKI

**Direct Dial: (213) 330-7149**

**Email: elaine@hagens-berman.com**

Ms. Byszewski is an associate at **Hagens Berman** where she has worked since 2004. Her work has included consumer and employee protection suits against **Ford Motor Company, Costco** and **Solvay Pharmaceuticals (Estratest)** among others.

Prior to joining **Hagens Berman**, Ms. Byszewski focused her practice on public sector labor and employment litigation and counseling, including extensive work on a class action race discrimination case, a wrongful termination case and a disability discrimination case. During law school she worked in the trial division of the Attorney General of Massachusetts' office.

Among Ms. Byszewski's several publications are "Valuing Companion Animals in Wrongful Death Cases: A Survey of Current Court and Legislative Action and A Suggestion for Valuing Loss of Companionship" in *Animal Law Review* (2003), and "What's in the Wine? A History of FDA's Role" in *Food and Drug Law Journal* (2002).

Ms. Byszewski graduated summa cum laude from the University of Southern California in 1999 with a Bachelor of Science in public policy and management with a health care emphasis. She earned her law degree cum laude from Harvard Law School in 2002. She is admitted to practice law in the state of California.

## ROBERT GAUDET

**Direct Dial: (206) 268-9372**

**Email: robertg@hagens-berman.com**

Rob joined **Hagens Berman** in 2002 to focus on class action litigation.

Prior to law school, Rob worked for the U.S. Department of Justice, Civil Rights Division Criminal Section where he coordinated with lawyers and FBI agents on police brutality, racial violence, and peonage issues. He also interned for the Democratic National Committee Office of Latino Affairs, Congressman Xavier Becerra and the White House Office of Public Liaison. Before commencing his internships, Rob lived overseas working as the primary editor for an Estonian magazine, *The Baltic Review: Business Magazine of the Baltic States.*

Rob's honors and experiences also include winning a Rotary Club of Israel scholarship to complete a graduate year program at the Hebrew University of Jerusalem, co-founding the first student group of Habitat for Humanity in Great Britain, and working for the Wits/Vaal Regional Peace Secretariat in South Africa under a Columbia College Human Rights Scholarship.

Rob graduated from Stanford Law School in 2002 where he served as a staff columnist for *The Stanford Daily.* In 1999, Rob earned his master of studies in religion from the University of Oxford and received a post-graduate diploma in theology in 2001 from the university's Trinity College for studies in the Old Testament, the New Testament and Christian Moral Reasoning. He earned his bachelor's degree in political science from Columbia University in 1994 with a minor in psychology.

## STEPHANIE LEVIN BOZZO

**Direct Dial: (602) 224-2629**

**Email: stephanie@hagens-berman.com**

Stephanie joined the firm's Phoenix office in 1998 to focus on consumer, product, employment and labor class action litigation. Her recent cases include extensive work on the **Tobacco Litigation**, labor compensation disputes, computer software defect litigation, deceptive trade practice litigation, as well as cases involving single-state, multi-state and nationwide class actions pending in jurisdictions across the country.

Prior to joining **Hagens Berman**, Stephanie clerked for the in-house counsel of Emmis Communication Corporation, an international multimedia corporation. During law school, Stephanie worked in the area of commercial litigation for one of Indiana's premier bankruptcy and commercial collection firms and studied international law at the University of Innsbruck, Austria.

Stephanie earned her bachelor's degree from University of Arizona in 1994 and her law degree from Indiana University-Indianapolis in 1997. She is admitted to practice in Arizona and the U.S. District Court for the District of Arizona.

## HUGH E. MCNEELY

**Direct Dial: (617) 475-1961**

**Email: hugh@hagens-berman.com**

Hugh joined **Hagens Berman's** Boston office in 2004. He brings more than 25 years of litigation experience to the firm.

Prior to joining **Hagens Berman**, Hugh was Of Counsel to Simien & Simien in Baton Rouge, La. While there, he focused on medical malpractice, class-action and mass tort cases. Previously, Hugh was a solo practitioner with a focus on tobacco-related litigation. Prior to his solo practice, he was appointed Of Counsel to Provost Umphrey in Beaumont, Texas, where he served as coordinating

attorney and liaison counsel to the state of Texas in its suit against major tobacco companies. His guidance was integral to the state's $17.3 billion settlement with the tobacco companies.

Hugh also served as Of Counsel to Baggett McCall & Burgess in Lake Charles, La. While there, he worked exclusively on the *Castano* class action and other tobacco-related cases. Previously, Hugh held associate positions at Plauche Smith & Nieset and Roy Forrest & Lopresto - insurance defense law firms in Louisiana. He also enjoyed several years as an independent practitioner where his practice emphasized personal injury and appellate work.

Hugh received his bachelors in political science from Louisiana State University. After attending the University of San Diego School of International and Comparative Law in Paris, France for one year, he received his law degree from Louisiana State University Law Center in Baton Rouge, La.

Hugh is admitted to practice law in the state of Louisiana and in the eastern district of Texas.

## EDWARD NOTARGIACOMO

**Direct Dial: (617) 475-1960**

**Email: ed@hagens-berman.com**

In 2002, Ed joined **Hagens Berman's** Boston office to focus on complex consumer, commercial and antitrust litigation class actions. Ed's recent cases include the **AWP Litigation** and other class action suits aimed at pharmaceutical companies who illegally attempt to deny market access to manufacturers of cheaper generic pharmaceuticals.

His extensive experience in complex cases includes consumer class actions against predatory lenders and employment litigation against a major retail chain, as well as intense involvement in high-profile impact litigation against cigarette manufacturers, the firearms industry and pharmaceutical manufacturers. Before joining the firm, Ed served as special assistant attorney general for Massachusetts in its suit against the tobacco industry. He played a major role in discovery in that case, including the defense of more than 45 depositions of state agency employees and led the effort to marshal documents and exhibits in preparation for trial. Ed also helped represent Rhode Island, New Hampshire and Maine in their suits against the tobacco industry. In another case, Ed represented the city of Boston in its suit against gun manufacturers and distributors in order to force them to take responsibility for some of the violence perpetrated with firearms, negligently and often illegally distributed in cities like Boston.

Ed received his bachelor's degree from Brown University in 1989, earning his juris doctor with honors from Boston University in 1994 where he served on the *Boston University Public Interest Law Review*. Ed is admitted to practice in Massachusetts and in the U.S. District Court for the District of Massachusetts.

## DIEGO RODRIGUEZ

**Direct Dial: (602) 224-2630**

**Email: diego@hagens-berman.com**

Diego joined **Hagens Berman's** Phoenix office in 2004. He brings to the firm several years of civil trial experience. Prior to joining **Hagens Berman**, Diego practiced law at Goldberg & Osborne in Tucson, Ariz. His practice consisted of personal injury, product liability and wrongful death litigation. Diego previously served as the deputy county attorney for the criminal division of the Pima County, Ariz. Attorney's Office. During his four years there he prosecuted numerous misdemeanor, vehicular offense, property crime, child abuse, and first-degree homicide cases. Diego further cultivated broad litigation expertise in insurance defense, construction defect, toxic torts, insurance coverage, general business, and automobile product liability while practicing at Gust Rosenfield, P.C.; Snell & Wilmer; and The Hameroff Law Firm, all in Arizona.

Diego graduated from the **University of Notre Dame** in 1992, with a bachelors in finance, and
received his law degree from the University of Arizona in 1995. He is admitted to practice in the state
of Arizona.

## NICHOLAS STYANT-BROWNE

**Direct Dial: (206) 268-9373**

**Email: nick@hagens-berman.com**

Nick joined **Hagens Berman** in 2001 to practice class action and multi-plaintiff litigation.  Recent
projects include **Rio Tinto Litigation** for human rights and environmental abuses in respect of the
Panguna mine on the Pacific island of Bougainville.

Before joining the firm, Nick was one of five senior partners at Australia's largest plaintiff law firm
working on class actions, environmental litigation and antitrust litigation.  He served as co-counsel
on Australia's largest class action against a wholly owned subsidiary of **Exxon** arising out of a gas
plant explosion which shut down the gas supply to Melbourne and most of the State of Victoria for
10 days.  As lead counsel in a landmark case against **BHP** (now BHP Billiton), Nick helped force
mining companies adopt stricter environmental standards in developing countries through this case
outlining the environmental devastation caused by the Ok Tedi mine in Papua New Guinea.  Nick
also served as lead counsel at the trial against Australia's major newspaper publishers, including
*News*, which resulted in the deregulation of the system of distribution of newspapers and magazines
throughout Australia.

His practice has involved several projects in the Pacific Rim acting principally on behalf of the
indigenous peoples of poor developing Pacific nations claiming environmental and human rights
abuses.  Nick's successes and passion for the causes of indigenous peoples against exploitative
resource companies have led to him being retained by the national governments of Pacific States
including Tuvalu and the Kingdom of Tonga.  More recently, the Republic of Hungary retained him
to claim compensation against an Australian mining company, which leaked huge amounts of
cyanide from its tailings dam devastating the river systems of Western Europe.

## R. BRENT WALTON

**Direct Dial: (206) 268-9363**

**Email: brent@hagens-berman.com**

In 2001, Brent joined **Hagens Berman** to practice environmental, consumer, and other class action
litigation.  He is currently focused on the **Rio Tinto, Gold Train** and **Idaho Grass Burning** matters.

Prior to joining the firm, he represented plaintiffs in a variety of complex cases including toxic tort
litigation, consumer class actions against cellular telephone companies, major Clean Water Act
litigation in Louisiana, and the I-695 litigation in Washington state.  Additionally, Brent served as
special environmental counsel to Indian Tribes, worked for the Legal Resources Centre in South
Africa providing legal advice to township residents and assisting in public interest litigation, and
represented the nation's commercial fishermen by writing a brief filed with the United States
Supreme Court.

In 2000, 2001 and 2003, *Washington Law & Politics* identified Brent as a rising star in the legal
profession.  In 2002 and 2003, *Washington Law & Politics* named Brent a "Super Lawyer."

His many publications include "*United States v. Locke*: The Supreme Court Preempts States Ability
to Protect Their Navigable Waters and Marine Resources from Oil Tanker Spills" in the *Journal of
Environmental Law & Litigation*; "Ellickson's Paradox: It's Suicide to Maximize Welfare" in the
*N.Y.U. Environmental Law Journal*; "We're No Angels: *Paula Corbin Jones v. William Jefferson
Clinton*" in the *Tulane Law Review*; "*Castano v. American Tobacco Co.*: The Fifth Circuit Declares

that Addiction-as-Injury Is Too Immature a Tort to Be Class Action Certified" in the *Tulane Law Review*; "TMDLs May Require Changes by Nonpoint Polluters" in the *Daily Journal of Commerce*; and "Into the Breach: Restoring Rivers, Relicensing Dams" in the *Daily Journal of Commerce*.

In 1990, Brent received his bachelor's degree from Reed College, and he received his law degree from Tulane University School of Law in 1997, where he served as managing editor of the *Tulane Law Review*. Brent is admitted to practice throughout Washington state, the U.S. District Courts for the Western and Eastern District of Washington, the Ninth Circuit and D.C. Circuit Court of Appeals, as well as the United States Supreme Court.

## TYLER WEAVER

**Direct Dial: (206) 268-9355**

**Email: tyler@hagens-berman.com**

Tyler joined the firm in 2001 to practice class action litigation. Currently, he focuses on the **ManorCare, Raytheon** and **WTO** cases.

Prior to joining **Hagens Berman**, Tyler served as a staff attorney for Senior Judge Justin L. Quackenbush of the U.S. District Court for the Eastern District of Washington. In addition, he held the position of editor-in-chief of the *Berkeley Journal of Employment and Labor Law*. Tyler's experience also includes drafting and administering employee benefit plans, working for a firm specializing in plaintiffs' ERISA litigation, and volunteering for the East Bay Workers' Rights Clinic.

Tyler graduated cum laude with a bachelor's degree in English from the University of Oregon in 1992 and received his law degree from the University of California, Berkeley School of Law, Boalt Hall, in 1999. A member of both the Washington and Oregon bars, he is admitted to practice in the U.S. District Court for the Eastern District of Washington.

HAGENS BERMAN LLP

# References

## REPRESENTATION OF STATE OF WASHINGTON IN THE TOBACCO LITIGATION

David Walsh
1125 Washington Street S.E., P.O. Box 401
Olympia, WA 98504-0100
(360) 753-6228

## REPRESENTATION OF ARIZONA IN THE TOBACCO LITIGATION

Attorney General Grant Woods
State of Arizona
Office of the Attorney General
Insurance Defense Section
1275 West Washington
Phoenix, AZ 85007
(602) 542-5025

## REPRESENTATION OF MICROSOFT

Richard Wallis
Microsoft Corporation
One Microsoft Way
Redmond, WA 98052-6399
(425) 882-8080

# A Perspective on our Performance from the Bench

Perhaps one of the most telling references comes from the concluding comments of the Judge presiding over the State of Oregon's case against Big Tobacco.

**MR. BERMAN:** Nothing further, Your Honor.

**THE COURT:** Anything else for the record? Well, may I take just a couple more minutes of your time to say this has been an extraordinary experience from my perspective. We have a lot of emphasis in our profession these days about people complaining that lawyers are not professional, that they are not civil, they do things in the manner in which they practice that discredits the profession, and I wish those critics could have seen all of you in action.

This has been an extraordinary experience from my perspective. I cannot conceive of another case where there has been so much at stake, and all of you, from the outsiders to local counsel, have been extraordinarily responsible to resolve as much as you could and to bring to me only the issues that really needed rulings. I cannot tell you how much I appreciate all of your work in that regard, and I know that that was you, as individuals, doing the important thing because in a case of this magnitude, with local and regional and national and international levels of attorneys, it's very hard to connect with people.

I just hope some time before I stop during this wonderful year, I have another chance to see this kind of lawyering. *It's been stunning, and I really want to say that it's been a wonderful experience.*

So, Hallelujah.